# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| DAVID N. ZIMMERMAN, Individually and On Behalf of All Others Similarly Situated, | Case No.: |
| | Hon. |
| Plaintiff, | |
| v. | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| DIPLOMAT PHARMACY, INC., PHILIP R. HAGERMAN, GARY W. KADLEC and SEAN M. WHELAN, | |
| | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff David N. Zimmerman ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Diplomat Pharmacy, Inc., ("Diplomat" or the "Company"), with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Diplomat; and (c) review of other publicly available information concerning Diplomat.

## NATURE OF THE ACTION AND OVERVIEW

1.     This is a class action on behalf of persons and entities that acquired Diplomat securities between October 9, 2014, and November 2, 2016, inclusive (the "Class Period"), against the Defendants, seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.     Diplomat is a specialty pharmacy that services patients with complex chronic diseases, including the dispensing, delivery, dosing and reimbursement of clinically intensive, high cost specialty drugs.

3.     The Company's core revenues are driven by multi-year and life-long patient care to treat chronic conditions including oncology, immunology and

hepatitis C, and as a specialty pharmacy the Company is liable for direct and indirect remuneration ("DIR fees") to government agencies, payors and insurance companies.

4.      Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company lacked adequate internal controls over its financial reporting; (2) as a result the Company could not adequately calculate DIR fees; (3) the Company's hepatitis C segment was not performing as previously disclosed to investors; (4) and therefore, the Company had overstated its full-year 2016 guidance; and (5) that, as a result of the foregoing, Defendants' statements about Diplomat's business, operations, and prospects, were false and misleading and/or lacked a reasonable basis.

5.      On October 26, 2016, the Company announced that its Chief Financial Officer, Sean Whelan, would resign. And, notably, Mr. Whelan's resignation came just one week ahead of the Company announcing third quarter 2016 earnings.

6.      On this news the Company's shares fell $3.57 per share, or over 12%, to close at $25.31 per share on October 26, 2016.

7.      And, one week later, on November 2, 2016, the Company announced its third quarter 2016 results, reporting earnings per share of $0.21 on revenues of

2

$1.18 billion. The Company also lowered its high end guidance for the full year 2016, to $4.6 billion from $4.9 billion. The Company's Chief Executive Officer attributed the poor operating results to "softness in the hepatitis C business" and DIR fees, adding that, "the methodology and transparency around how PBMs are applying these DIR fees changed materially in 2016."

8. On this news the Company's shares fell $9.43 per share, or over 42%, to close at $12.95 per share on November 3, 2016.

9. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

10. The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

11. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

12. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in

3

this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District.

13.    In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

14.    Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased Diplomat common stock during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

15.    Defendant Diplomat is incorporated in Michigan, and the Company's principal executive offices are located in Flint, Michigan.  Diplomat's common stock trades on the New York Stock Exchange ("NYSE") under the symbol "DPLO."

16.    Defendant Philip R. Hagerman ("Hagerman") has served at all relevant times as the Company's Chief Executive Officer and Chairman.

17.    Defendant Sean M. Whelan ("Whelan") has served at all relevant times as the Company's Chief Financial Officer ("CFO") and Executive Vice

4

President of Finance, and recently announced his resignation as CFO effective December 31, 2016.

18.     Defendant Gary W. Kadlec ("Kadlec") has served at all relevant times as the Company's President, until his abrupt departure on November 1, 2016.

19.     Defendants Hagerman, Whelan and Kadleec (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of Diplomat's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market.  The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.  The Individual Defendants are liable for the false statements pleaded herein.

5

## SUBSTANTIVE ALLEGATIONS

### Materially False and Misleading
### Statements Issued During the Class Period

20. The Class Period begins on October 9, 2014 when the Company's shares began trading on the New York Stock Exchange.

21. On November 10, 2014, the Company issued a press release announcing its third quarter results for the quarter ended September 30, 2014. The Company announced revenue of $595.5 and net income of $4.5 million. Diplomat stated further in relevant part:

> Our third quarter results continued to highlight the strong momentum in our business. We continue to be selected to distribute new innovative limited distribution drugs, like Imbruvica and Zydelig, as well as broadly distributed drugs, due to our high touch patient model and unique industry position. The integration of our acquisitions is progressing nicely, and they are contributing to our revenue and profitability growth. We believe that we are well positioned to continue to gain share in the fast-growing specialty pharmacy marketplace, and the public market provides us tremendous financial flexibility to carry out our strategy.

22. On November 10, 2014, the Company filed with the SEC its Form 10Q, reporting results for the quarter ended September 30, 2014. The Company reiterated the results previously announced in its November 10, 2014 press release; and, reported that hepatitis C patient care was a key driving force in its future growth and profitability.

23. On March 2, 2015, the Company issued a press release announcing

6

fourth quarter and full year 2014 financial results, and provided financial guidance for 2015. For the fourth quarter 2014, the Company announced revenues of $612 million. And, for the full year 2015, the Company reported revenues of $2.215 billion. Commenting on the Company's results, Defendant Hagerman told investors:

> 2014 proved to be a very successful year for Diplomat as we continued to execute on our growth strategy. We produced strong financial results and continued our above-industry growth. During the year, we won access to numerous limited distribution drug panels, we improved our mix of specialty drugs, and expanded both our gross profit and EBITDA margins. Our specialty infusion platform showed momentum in 2014 and with the recent announcement of our agreement to acquire BioRx, Diplomat will become one of the largest specialty infusion providers in the U.S. I believe the macro trends in the industry are very favorable to Diplomat and with our broad product offerings and high touch service model, we are well positioned to continue to benefit from those strong trends in 2015.

24.     On March 3, 2015, the Company also filed its annual report on Form 10K with the SEC. The Company reiterated the results previously published in its March 2, 2015 press release, and noted its continuous focus on hepatitis C patient care.

25.     On May 11, 2015, the Company issued a press release announcing its first quarter results for the quarter ended March 31, 2014. The Company announced earnings per share of $0.09 on revenues of $625 million. Diplomat stated further in relevant part:

> We're pleased with the first quarter results, as Diplomat continued to

7

benefit from strong specialty pharmacy industry trends and further gained market share. Our role as the largest independent specialty pharmacy in the nation, combined with our dedication to our high touch patient model allowed us to win access to several limited distribution drug panels in the quarter. As we've previously stated, we remain focused on growing our high margin businesses and saw success in this area during the quarter. With the successful completion of the BioRx acquisition on April 1, 2015, we have established a platform on which we will drive our specialty infusion business. 2015 is off to a great start and I'm enthusiastic about our outlook for the remainder of the year.

26.    On May 12, 2015, the Company filed with the SEC its Form 10Q, reporting results for the quarter ended March 31, 2015. The Company reiterated the results previously announced in its May 11, 2015 press release.

27.    On November 3, 2015, the Company issued a press release announcing its third quarter results for the quarter ended September 30, 2015. The Company announced earnings per share of $0.27 on revenues of $947 million. Diplomat stated further in relevant part:

During the third quarter, we continued to strengthen our leadership position in the specialty pharmacy industry with 59% revenue growth and 212% adjusted EBITDA growth. In fact, the 32% growth in organic revenue was our highest organic growth quarter yet this year. Across the entire organization, this was another very successful quarter as we saw tremendous growth in our core business, including our recent acquisitions, which are performing well ahead of our expectations. We are incredibly excited about our industry and its growth potential. There remains a rich pipeline of drugs in development that lend themselves to the specialty pharmacy model and I'm very confident in our ability to continue to win access to limited distribution panels. In the wake of such a strong quarter, we are raising our outlook for the remainder of 2015.

8

28.   On November 4, 2015, the Company filed with the SEC its Form 10Q, reporting results for the quarter ended September 30, 2015. The Company reiterated the results previously announced on November 3, 2015. The Company also reported that hepatitis C patient care was a key driving force in its future growth and profitability, and to that end the Company informed investors that it had acquired Burman's Apothecary, LLC in order to expand its hepatitis C patient care, and increase its national presence.

29.   On February 29, 2016, the Company issued a press release announcing fourth quarter and full year 2015 financial results, and provided financial guidance for 2016. For the fourth quarter 2015, the Company announced earnings per share of $0.21 on revenues of $987 million. And, for the full year 2015, the Company reported earnings per share of $0.75 on revenues of $3.367 billion.   Commenting on the Company's results, Defendant Hagerman told investors:

> During the fourth quarter, we delivered our strongest organic and overall revenue growth quarter of the year. At the same time, we continued to meaningfully improve margins and to deliver growth from multiple diverse areas within our business including: growing prescription volume and revenue from existing drugs, continuing to win access to nearly all meaningful specialty drug approvals, and generating additional revenue synergies from our recent acquisitions. 2015 was a record year for drug approvals from the FDA, and this recent influx of approvals, combined with the remaining rich pipeline of drugs in development, keeps us very confident in our ability to deliver solid growth for the foreseeable future.

30.     On February 29, 2016, the Company also filed its annual report on Form 10K with the SEC. The Company reiterated the results previously published in its press release, and noted its continuous focus on hepatitis C patient care, including through the acquisition of Burman Apothecary, LLC.

31.     On May 9, 2016, the issued a press release announcing first quarter results for the period ended March 31, 2016. Therein, the Company reported earnings per share of $0.23 on revenues of $996 million; and organic growth of 36%. The Company also raised its 2016 outlook to $4.9 billion at the high end, with Defendant Hagerman commenting in relevant part:

> I'm extremely pleased with our strong revenue and EBITDA growth in the first quarter. As we've outlined previously, Diplomat continues to benefit from new drug approvals and our unparalleled position relative to the ever increasing use of limited distribution panels. Additionally, our recently announced strategic acquisition of TNH Advanced Specialty Pharmacy aligns with our goals of expanding our opportunities geographically and deepening our therapeutic expertise. We anticipate this acquisition to be accretive to our adjusted EBITDA and are therefore raising our 2016 outlook.

32.     On May 9, 2016, the Company also filed its quarterly report on Form 10Q with the SEC. The Company reiterated the results previously published in its press release, and noted its continuous focus on hepatitis C patient care, including through the acquisition of Burman Apothecary, LLC.

33.  On August 9, 2016, the Company issued a press release announcing

second quarter results for the period ended June 30, 2016. Therein, the Company

reported earnings per share of $0.13 on revenues of $1.089 billion; and organic

growth of 23%. The Company also maintained its 2016 outlook at $4.9 billion at

the high end, with Defendant Hagerman commenting in relevant part:

> This was a solid quarter for Diplomat with total growth of 35%,
> organic growth of 23% and continued leadership in the oncology
> space, as we gained access to new limited distribution drugs. While
> our overall business was impacted by a slowing Hepatitis C market,
> the remainder of our business was strong, growing almost 30%
> organically. This growth was driven by our oncology business
> increasing 38% and our specialty infusion segment growing by 22%.
> Overall prescription growth was much stronger than the 3% implies,
> as we exited the high volume, low profit compounding business in late
> 2015 and we intentionally moved away from other high volume, low
> revenue non-specialty business. Net of these changes, our volume
> increased approximately 13%. I remain very confident in Diplomat's
> position in the industry, organic growth prospects, and opportunities
> to make strategic acquisitions.

34.   On August 9, 2016, the Company also filed its quarterly report on

Form 10Q with the SEC. The Company reiterated the results previously published

in its press release, and noted its continuous focus on hepatitis C patient care,

including through the acquisition of Burman Apothecary, LLC.

35.   The above statements contained in ¶¶20-34 were materially false

and/or misleading, as well as failed to disclose material adverse facts about the

Company's business, operations, and prospects. Throughout the Class Period,

Defendants made materially false and/or misleading statements, as well as failed to

disclose material adverse facts about the Company's business, operations, and

11

prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose: (1) the Company lacked adequate internal controls over its financial reporting; (2) as a result the Company could not adequately calculate DIR fees; (3) the Company's hepatitis C segment was not performing as previously disclosed to investors; (4) and therefore, the Company had overstated its full-year 2016 guidance; and (5) that, as a result of the foregoing, Defendants' statements about Diplomat's business, operations, and prospects, were false and misleading and/or lacked a reasonable basis.

### Disclosures at the End of the Class Period

36.    On October 26, 2016, the Company announced that its Chief Financial Officer, Sean Whelan, would resign. And, notably, Mr. Whelan's resignation came just one week ahead of the Company announcing third quarter 2016 earnings.

37.    On this news the Company's shares fell $3.57 per share, or over 12%, to close at $25.31 per share on October 26, 2016.

38.    And, one week later, on November 2, 2016, the Company announced its third quarter 2016 results, reporting earnings per share of $0.21 on revenues of $1.18 billion. The Company also lowered its high end guidance for the full year 2016, to $4.6 billion from $4.9 billion. The Company's Chief Executive Officer attributed the poor operating results to "softness in the hepatitis C business" and DIR fees, commenting in relevant part:

We are disappointed with our third quarter results, which were significantly impacted by the softness in the hepatitis C business nationwide, as well as by DIR fees. The methodology and transparency around how PBMs are applying these DIR fees changed materially in 2016, and while we cannot reverse the impact they had on this quarter, we are working with our partners in the specialty pharmacy industry and with legislators to achieve an amicable solution to this problem.

Despite the pressure we felt during the third quarter, our largest therapeutic category, oncology, continued to lead our growth. Driven by strong trends such as limited distribution, our oncology business increased 57% year over year, and 36% on an organic basis. We also have confidence in Diplomat's future prospects as we see continued growth in the robust drug development pipeline, a number of early wins from our strategy of marketing directly to payors and health plans, and our ability to make strategic acquisitions in the core specialty pharmacy industry, as well as in expanding complementary service areas.

39.    On this news the Company's shares fell $9.43 per share, or over 42%, to close at $12.95 per share on November 3, 2016.

## CLASS ACTION ALLEGATIONS

40.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that acquired Diplomat's securities between October 9, 2014, and November 2, 2016, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which

13

Defendants have or had a controlling interest.

41.    The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Diplomat's common stock actively traded on the NYSE.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.  Millions of Diplomat shares were traded publicly during the Class Period on the NYSE.  As of January 1, 2016, the Company had 64,523,864 shares of common stock outstanding.  Record owners and other members of the Class may be identified from records maintained by Diplomat or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

42.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

43.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

44.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of

the Class.  Among the questions of law and fact common to the Class are:

(a)      whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)      whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Diplomat; and

(c)      to what extent the members of the Class have sustained damages and the proper measure of damages.

45.      A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

46.      The market for Diplomat's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Diplomat's securities traded at artificially inflated prices during the Class Period.  Plaintiff and other members of

the Class purchased or otherwise acquired Diplomat's securities relying upon the integrity of the market price of the Company's securities and market information relating to Diplomat, and have been damaged thereby.

47. During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Diplomat's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading. The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Diplomat's business, operations, and prospects as alleged herein.

48. At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Diplomat's financial well-being and prospects. These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and/or

16

misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

49.   Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

50.   During the Class Period, Plaintiff and the Class purchased Diplomat's securities at artificially inflated prices and were damaged thereby.  The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

51.   As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, Individual Defendants, by

virtue of their receipt of information reflecting the true facts regarding Diplomat, their control over, and/or receipt and/or modification of Diplomat's allegedly materially misleading misstatements and/or their associations with the Company which made him privy to confidential proprietary information concerning Diplomat, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE (FRAUD-ON-THE-MARKET DOCTRINE)

52.     The market for Diplomat's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, Diplomat's securities traded at artificially inflated prices during the Class Period.  On July 11, 2016, the Company's stock price closed at a Class Period high of $37.70 per share.  Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Diplomat's securities and market information relating to Diplomat, and have been damaged thereby.

53.     During the Class Period, the artificial inflation of Diplomat's stock was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Diplomat's business, prospects, and operations.  These material misstatements

18

and/or omissions created an unrealistically positive assessment of Diplomat and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company stock. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

54.   At all relevant times, the market for Diplomat's securities was an efficient market for the following reasons, among others:

(a)   Diplomat stock met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b)   As a regulated issuer, Diplomat filed periodic public reports with the SEC and/or the NYSE;

(c)   Diplomat regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)   Diplomat was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to

19

the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

55.     As a result of the foregoing, the market for Diplomat's securities promptly digested current information regarding Diplomat from all publicly available sources and reflected such information in Diplomat's stock price. Under these circumstances, all purchasers of Diplomat's securities during the Class Period suffered similar injury through their purchase of Diplomat's securities at artificially inflated prices and a presumption of reliance applies.

56.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

57.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Diplomat who knew that the statement was false when made.

## FIRST CLAIM

**Violation of Section 10(b) of The Exchange Act and
Rule 10b-5 Promulgated Thereunder
Against All Defendants**

58.    Plaintiff repeats and realleges each and every allegation contained

above as if fully set forth herein.

59.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Diplomat's securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

60.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Diplomat's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5.   All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

61.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material

22

information about Diplomat's financial well-being and prospects, as specified herein.

62.     Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Diplomat's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Diplomat and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

63.     Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections

23

and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

64.     Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Diplomat's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities.  As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

65.    As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Diplomat's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Diplomat's securities during the Class Period at artificially high prices and were damaged thereby.

66.    At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Diplomat was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Diplomat securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

67.    By virtue of the foregoing, Defendants violated Section 10(b) of the

25

Exchange Act and Rule 10b-5 promulgated thereunder.

68.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM

### Violation of Section 20(a) of The Exchange Act
### Against the Individual Defendants

69.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

70.    Individual Defendants acted as controlling persons of Diplomat within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level position, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.  Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to

and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

71.    In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, are presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

72.    As set forth above, Diplomat and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and/or omissions as alleged in this Complaint.    By virtue of their position as a controlling person, Individual Defendants is liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)    Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)    Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial,

including interest thereon;

(c)    Awarding Plaintiff and the Class their reasonable costs and expenses

incurred in this action, including counsel fees and expert fees; and

(d)    Such other and further relief as the Court may deem just and proper.

## <u>JURY TRIAL DEMANDED</u>

Plaintiff hereby demands a trial by jury.


Dated:  November 10, 2016                    Respectfully submitted,

                                             */s/ E. Powell Miller*_____
                                             E. Powell Miller (P39487)
                                             Sharon S. Almonrode (P33938)
                                             **THE MILLER LAW FIRM, P.C.**
                                             950 W. University Dr., Suite 300
                                             Rochester, MI 48307
                                             Tel: (248) 841-2200
                                             Fax: (248) 652-2852
                                             mln@millerlawpc.com
                                             ssa@millerlawpc.com

                                             Lionel Z. Glancy
                                             Robert V. Prongay
                                             Lesley F. Portnoy
                                             **GLANCY PRONGAY &
                                             MURRAY LLP**
                                             1925 Century Park East, Suite 2100
                                             Los Angeles, CA 90067
                                             Telephone:  (310) 201-9150
                                             Facsimile:   (310) 201-9160

                                             *Attorneys for Plaintiff*

28