UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID N. ZIMMERMAN, Individually
and on Behalf of All Others Similarly
Situated,

    Plaintiffs,

v.

DIPLOMAT PHARMACY, INC., PHILIP
R. HAGERMAN, and SEAN M.
WHELAN,

    Defendants.
_____/

Case No. 16-14005

Honorable John Corbett O'Meara

## OPINION AND ORDER
## DENYING DEFENDANTS' MOTION TO DISMISS

This matter came before the court on defendants Diplomat Pharmacy, Inc., Philip R. Hagerman, and Sean M. Whelan's May 26, 2017 Motion to Dismiss Plaintiffs' Amended Class Action Complaint. Plaintiffs filed a response July 10, 2017; and Defendants filed a reply brief August 9, 2017. Pursuant to Local Rule 7.1(f)((2), no oral argument was heard.

### BACKGROUND FACTS

This is a shareholder class action suit in which Plaintiffs allege violations of the Securities Exchange Act of 1934 and is governed by the Private Securities Litigation

Reform Act of 1995 ("PSLRA"). On a motion to dismiss, the court is required to "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations as true, and examine whether the complaint contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ohio Pub. Emps. Ret. Sys. v. Federal Home Loan Mortg. Corp., 830 F.3d 376, 382-83 (6th Cir. 2016) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). Accordingly, the court takes its statement of facts from Plaintiffs' response brief as follows:

> In late 2015, Defendants were notified by Caremark, the largest PBM [pharmacy benefits manager] through which Diplomat dispensed its Part D prescriptions, that starting January 1, 2016, DIR [direct and indirect remuneration] fees assessed by Caremark would go from a flat $3 to $7 amount to a percentage range of 3% to 5% on the cost of each billed prescription's ingredients. What this meant for Diplomat, the largest specialty pharmacy in the country, was that because the ingredients of their Part D drugs cost upwards of $30,000 (or more) per prescription, the DIR fees deducted from Caremark reimbursements would increase 1,000% to 10,000% (or more) in 2016. Therefore, Defendant knew that unlike in prior years, when Caremark would have deducted only $3 to $7 from a $30, 000 Part D prescription dispensed by Diplomat, in 2016, the change to the 3% to 5% range meant that the DIR fee would skyrocket to between $900 and $1,500 on that same prescription.
>
> Despite knowing about the financial havoc these Caremark DIR fees would wreak on Diplomat's profitability, Defendants concealed this information from investors by failing to timely record adequate accruals for DIR fees in Diplomat's publicly filed 1Q16 and 2Q16 financial results, in violation of GAAP [generally accepted accounting principles], and misleadingly omitting material information about DIR fees from the Company's 2015 10-K and 1Q16 and 2Q16 10-Qs. Defendants knew

that if they had properly accrued these DIR fees in their publicly filed financial statements, investors would have been alerted to the astronomical increases in DIR fees and their material negative impact on profitability, and Diplomat's stock price would surely suffer (as it eventually did) and potentially derail the ongoing merger negotiations it was having with Caremark's parent company, CVS. And because Diplomat never even mentioned DIR fees or related accruals in any of its financials filed before the end of the Class Period, there is no reason to believe that CVS was alerted to Defendants' failure to properly accrue DIR fees assessed by Caremark.

Investors began to learn the truth when, after the close of trading on October 25, 2016, Diplomat announced that defendant Whelan had resigned without a successor in place and just days before the release of 3Q16 financial results. In response, on October 26, 2016, Diplomat's stock tumbled more than 12% on unusually heavy trading volume. The full truth of Defendants' previously concealed scheme was revealed when after the close of trading on November 2, 2016, Diplomat announced its 3Q16 results, reporting that '[t]hird quarter revenue and profit measures . . . were negatively impacted by an incremental $8 million of DIR fees, of which $4 million was retroactive to Q1 and Q2 2016.' In response, on November 3, 2016, Diplomat's stock plummeted more than 40%, falling from $22.38 to $12.95 on heavy volume, thereby harming investors.

## **LAW AND ANALYSIS**

To state a claim for securities fraud a plaintiff must allege "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." Matrixx Initiatives, Inc. v. Siracusano, 563 U.S. 27, 37-38 (2011). This claim is

subject to the pleading standards of the PSLRA, which require allegations to be stated with particularity.

In their motion to dismiss Defendants contend that Plaintiffs have failed to plead, among other things, a strong inference of scienter, the "knowing and deliberate intent to manipulate, deceive, or defraud," or "highly unreasonable conduct which is an extreme departure from the standards of ordinary care." Doshi v. General Cable Corp., 823 F.3d 1032, 1039 (6th Cir. 2016). Defendants argue that instead, Plaintiffs have pleaded "fraud by hindsight." Defs.' br. at 24-25.

However, the standard under which the court must review Defendants' motion to dismiss "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." Bell Atl. Corp v. Twombly, 550 U.S. 544, 556 (2007). Construing the amended complaint in this case in the light most favorable to the purported plaintiff class and accepting all well-pleaded factual allegations as true, the court finds that it does contain sufficient factual matter, accepted as true, to state a claim for relief. Accordingly, the court must deny Defendants' motion to dismiss the amended complaint.

# **ORDER**

It is hereby **ORDERED** that Defendants' May 26, 2017 Motion to Dismiss Plaintiffs' Class Action Amended Complaint is **DENIED.**

                                                s/John Corbett O'Meara
                                                United States District Judge

Date: January 19, 2018

I hereby certify that a copy of the foregoing document was served upon counsel of record on this date, January 19, 2018, using the ECF system.

                                                s/William Barkholz
                                                Case Manager