UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

| | | |
|---|---|---|
| DAVID N. ZIMMERMAN, Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) | Civ. No. 2:16-cv-14005-AC-SDD |
| | ) | Hon. Avern Cohn |
| Plaintiff, | ) ) | CLASS ACTION |
| vs. | ) ) | LEAD PLAINTIFFS' UNOPPOSED MOTION FOR (I) PRELIMINARY |
| DIPLOMAT PHARMACY, INC., et al., | ) ) | APPROVAL OF CLASS ACTION SETTLEMENT, (II) CERTIFICATION |
| Defendants. | ) ) | OF THE CLASS, AND (III) APPROVAL OF NOTICE TO THE |
| | ) | CLASS |

1555845_1

Lead Plaintiffs David N. Zimmerman, William Kitsonas, and the Government Employees' Retirement System of the Virgin Islands ("Lead Plaintiffs") respectfully move the Court to enter an Order: (i) preliminarily approving the Settlement set forth in the Stipulation of Settlement; (ii) certifying the Class and appointing Lead Plaintiffs as class representatives and Lead Counsel Glancy Prongay & Murray LLP and Robbins Geller Rudman & Dowd LLP ("Lead Counsel") as class counsel for purposes of the Settlement; (iii) approving the form and manner of providing notice of the Settlement to the Class; and (iv) setting a hearing date at which the Court will consider final approval of the Settlement, approval of the Plan of Allocation, and Lead Counsel's Fee and Expense Application.

In support of the motion, Lead Plaintiffs rely on the accompanying Memorandum of Law, the Stipulation of Settlement and exhibits thereto, and the Declaration of Michael Joaquin Regarding Notice and Administration. A proposed order is also submitted herewith.

DATED:  April 22, 2019

ROBBINS GELLER RUDMAN
  & DOWD LLP
ELLEN GUSIKOFF STEWART
JONAH H. GOLDSTEIN
MATTHEW I. ALPERT
HILLARY B. STAKEM
ALEXI H. PFEFFER-GILLETT

s/Matthew I. Alpert
MATTHEW I. ALPERT

- 1 -

1555845_1

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

GLANCY PRONGAY & MURRAY LLP
LIONEL Z. GLANCY
JOSHUA L. CROWELL
1925 Century Park East, Suite 2100
Los Angeles, CA  90067
Telephone:  310/201-9150
310/201-9160 (fax)

Counsel for Lead Plaintiffs and the Class

VANOVERBEKE MICHAUD &
    TIMMONY, P.C.
MICHAEL J. VANOVERBEKE (P42641)
THOMAS C. MICHAUD (P46787)
79 Alfred Street
Detroit, MI  48201
Telephone:  313/578-1200
313/578-1201 (fax)
mvanoverbeke@vmtlaw.com
tmichaud@vmtlaw.com

THE MILLER LAW FIRM, P.C.
E. POWELL MILLER (P39487)
SHARON S. ALMONRODE (P33938)
950 W. University Dr., Suite 300
Rochester, MI  48307
Telephone:  248/841-2200
248/652-2852 (fax)
mln@millerlawpc.com
ssa@millerlawpc.com

Liaison Counsel for the Class

- 2 -

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

| | | |
|---|---|---|
| DAVID N. ZIMMERMAN, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | Civ. No. 2:16-cv-14005-AC-SDD |
| | ) | Hon. Avern Cohn |
| Plaintiff, | ) ) | CLASS ACTION |
| vs. | ) ) | MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS' |
| DIPLOMAT PHARMACY, INC., et al., | ) ) | UNOPPOSED MOTION FOR (I) PRELIMINARY APPROVAL OF |
| Defendants. | ) ) | CLASS ACTION SETTLEMENT, (II) CERTIFICATION OF THE CLASS, |
| | ) | AND (III) APPROVAL OF NOTICE TO THE CLASS |

1555868_1

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................1

II.  BACKGROUND ................................................................................4

    A.   History of the Litigation ................................................................4

    B.   History of Settlement Negotiations .........................................7

    C.   The Settlement Terms ...............................................................8

III. ARGUMENT ....................................................................................10

    A.   Legal Standards ........................................................................10

IV.  Preliminary Approval of the Settlement Should be Granted........................12

    A.   The Settlement is Entitled to a Presumption of Fairness ...................12

    B.   The Settlement Does Not Have Any Apparent Deficiencies.............13

    C.   The Settlement Falls Within the Range of Possible Approval ..........14

V.   The Class Should be Certified for Settlement Purposes................................16

    A.   The Class Satisfies the Prerequisites of Rule 23(a) ..........................17

        1.   The Class is Numerous ...........................................................17

        2.   There are Questions of Law and Fact Common to the Class ...................................................................................18

        3.   Lead Plaintiffs' Claims are Typical of the Class ....................19

        4.   Lead Plaintiffs are Adequate..................................................19

    B.   The Requirements of Rule 23(b)(3) are also Satisfied.......................21

        1.   Common Questions of Law and Fact Predominate .................21

        2.   A Class Action is a Superior Method for Adjudicating the Claims at Issue .........................................................22

1555868_1

**Page**

VI.     The Form and Process of Notice to the Class Should be Approved .............24

VII.    The Parties' Proposed Schedule of Settlement Events Should be
        Approved .......................................................................................................26

VIII.   CONCLUSION..............................................................................................27

1555868_1

# TABLE OF AUTHORITIES

**Page**

## CASES

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)......................................................................17, 21

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013).............................................................................22

*Beattie v. CenturyTel, Inc.*,
511 F.3d 554 (6th Cir. 2007) ..............................................................21

*Brotherton v. Cleveland*,
141 F. Supp. 2d 894 (S.D. Ohio 2001) ...............................................12

*Castillo v. Envoy Corp.*,
206 F.R.D. 464 (M.D. Tenn. 2002) .....................................................16

*Dallas v. Alcatel-Lucent USA, Inc.*,
No. 09-14596, 2013 WL 2197624
(E.D. Mich. May 20, 2013).............................................................11, 14

*Erica P. John Fund, Inc. v. Halliburton Co.*,
563 U.S. 804 (2011).............................................................................22

*Fidel v. Farley*,
534 F.3d 508 (6th Cir. 2008) ..............................................................25

*Filby v. Windsor Mold USA, Inc.*,
No. 13-cv-1582, 2015 WL 1119732
(N.D. Ohio Mar. 11, 2015) ..................................................................16

*Glickenhaus & Co. v. Household Int'l, Inc.*,
787 F.3d 408 (7th Cir. 2015) ..............................................................14

*Griffin v. Flagstar Bancorp, Inc.*,
2013 WL 6511860 (E.D. Mich. Dec. 12, 2013) .................................11

*In re "Agent Orage" Prod. Liab. Litig.*,
597 F. Supp. 740 (E.D.N.Y. 1984) .....................................................14

1555868_1

**Page**

*In re Direct Gen. Corp.*,
No. 05-0077, 2006 WL 2265472
(M.D. Tenn. Aug. 8, 2006) ..................................................................23

*In re NYSE Specialists Sec. Litig.*,
260 F.R.D. 55 (S.D.N.Y. 2009) .........................................................23

*In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.*,
2001 WL 1842315 (N.D. Ohio Oct. 20, 2001)....................................11

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
722 F.3d 838 (6th Cir. 2013) ..............................................................18

*Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of
Am. v. Gen. Motors Corp.*,
497 F.3d 615 (6th Cir. 2007) ..............................................................11

*La. Mun. Police Ret. Sys. v. Green Mountain Coffee Roasters, Inc.*,
2017 WL 3149424 (D. Vt. July 21, 2017)...........................................21

*Local 703, I.B. v. Regions Fin. Corp.*,
282 F.R.D. 607 (N.D. Ala. 2012), *aff'd in relevant part and
vacated on other grounds*, 762 F.3d 1248 (11th Cir. 2014) ...............21

*New England Health Care Emps. Pension Fund
v. Fruit of the Loom, Inc.*,
234 F.R.D. 627 (W.D. Ky. 2006) ........................................................12

*Rikos v. Procter & Gamble Co.*,
799 F.3d 497 (6th Cir. 2015) ..............................................................19

*Robbins v. Koger Props., Inc.*,
116 F.3d 1441 (11th Cir. 1997) ..........................................................15

*Ross v. Abercrombie & Fitch Co.*,
257 F.R.D. 435 (S.D. Ohio 2009).................................................18, 23

1555868_1

**Page**

*Salvagne v. Fairfield Ford, Inc.*,
  264 F.R.D. 321 (S.D. Ohio 2009).......................................................22

*Schleicher v. Wendt*,
  618 F.3d 679 (7th Cir. 2010) ............................................................22

*Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*,
  2015 U.S. Dist. LEXIS 41968
  (E.D. Mich. Mar. 31, 2015) ...............................................................13

*Simpson v. Citizens Bank*,
  No. 12-10267, 2014 WL 12738263
  (E.D. Mich. Jan. 31, 2014)................................................................13

*Tenn. Ass'n of Health Maint. Orgs., Inc. v. Grier*,
  262 F.3d 559 (6th Cir. 2001) ............................................................10

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011).........................................................................18

*Wilkof v. Caraco Pharm. Labs., Ltd.*,
  280 F.R.D. 332 (E.D. Mich. 2012) .............................................17, 19

*Williams v. Vukovich*,
  720 F.2d 909 (6th Cir. 1983) ............................................................12

*Willis v. Big Lots, Inc.*,
  242 F. Supp. 3d 634 (S.D. Ohio 2017) ...........................17, 18, 19, 20

*Young v. Nationwide Mut. Ins. Co.*,
  693 F.3d 532 (6th Cir. 2012) ............................................................20

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
  §78j(b)..............................................................................................4
  §78t(a) ..............................................................................................4
  §78u-4(a)(4) ......................................................................................9

- v -

**Page**

Federal Rules of Civil Procedure
    Rule 23 ....................................................................................*passim*
    Rule 23(a).....................................................................16, 17, 18, 19
    Rule 23(a)(1)...........................................................................17
    Rule 23(b)(3)...............................................................16, 21, 22, 23
    Rule 23(e)...............................................................................10
    Rule 30(b)(6)..................................................................2, 6, 13

Treasury Regulations
    § 1.468B-1................................................................................8

## SECONDARY AUTHORITIES

Stefan Boettrich and Svetlana Starykh, *Recent Trends in Securities*
    *Class Action Litigation: 2018 Full-Year Review*
    (NERA Jan. 29, 2019)......................................................................15

4 William B. Rubenstein, *Newberg on Class Actions* (5th ed. 2018)
    §13:13 ........................................................................................11,12

Lead Plaintiffs, David N. Zimmerman, William Kitsonas, and the Government Employees' Retirement System of the Virgin Islands ("GERS") ("Lead Plaintiffs"), on behalf of themselves and the proposed Class,[1] hereby seek preliminary approval of the Settlement they have reached with Defendants Diplomat Pharmacy, Inc. ("Diplomat" or the "Company"), Philip R. Hagerman and Sean Whelan ("Defendants," and together with Lead Plaintiffs, the "Parties"). This memorandum outlines the parameters of the Settlement, demonstrates why preliminary approval should be granted, and proposes a schedule for final approval of the Settlement. It also demonstrates why the Court should: (i) certify the proposed Class for settlement purposes; and (ii) approve the form and manner of providing notice of the Settlement to Class Members.

## I.      INTRODUCTION

Following extensive litigation and arms'-length, mediator-assisted negotiations, the Parties have reached an agreement to resolve all claims in this securities fraud class action (the "Litigation") for $14.1 million in cash (the "Settlement"). The terms and conditions of the Settlement are set forth in the Stipulation.

---

[1]      All capitalized terms used herein that are not otherwise defined shall have the meanings ascribed to them in the concurrently filed Stipulation of Settlement dated April 22, 2019 (the "Stipulation").

- 1 -

The Parties reached a resolution after nearly two-and-a-half years of hard-fought litigation.  By the time the Settlement was reached, Lead Plaintiffs were fully informed about the strengths and weaknesses of their case.  This recovery was possible only after the filing of an initial complaint; the appointment of Lead Plaintiffs pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"); Lead Counsel's extensive investigation and drafting of a detailed, 78-page amended class action complaint ("Complaint"); fully briefing and successfully defeating Defendants' motion to dismiss and motion for reconsideration of the Court's order denying the motion to dismiss; serving interrogatories and comprehensive document requests on Defendants; serving subpoenas on relevant third parties; engaging in numerous meet-and-confer discussions with Defendants and third parties regarding the scope of their document productions; analyzing more than 13,000 pages of documents produced by Defendants and third parties; conducting a fact deposition of Diplomat pursuant to Fed. R. Civ. P. 30(b)(6) on various topics; consulting with experts on loss causation and damages; and filing a motion for class certification, which included an expert report on market efficiency and damages.

Prior to settling, the Parties conducted lengthy arm's-length negotiations, including two in-person mediation sessions with mediators who are highly experienced in resolving securities actions.  The first occurred on May 22, 2018, with

- 2 -

former U.S. District Judge Layn R. Phillips; the second took place on December 6, 2018, with former San Francisco County Superior Court Judge William J. Cahill. Before each mediation session, the Parties exchanged detailed submissions on their views regarding liability and damages issues.  Although no agreement was reached after each session, additional negotiations took place while litigation efforts continued. The Settlement was reached only after Judge Cahill made a mediator proposal to resolve the Litigation for $14.1 million, which the Parties ultimately accepted.

Lead Plaintiffs and Lead Counsel – based on their experience, evaluation of the facts and applicable law, the amount and certainty of the Settlement, and the risk and expense of continued litigation – submit that the proposed Settlement is fair, reasonable, and adequate.  The Settlement represents an excellent result and is in the best interests of the Class.

Lead Plaintiffs respectfully request that the Court grant preliminary approval of the Settlement so that notice may be provided to the Class. Specifically, Lead Plaintiffs request that the Court enter the Parties' agreed-upon [Proposed] Order Preliminary Approving Settlement and Providing for Notice (the "Preliminary Approval Order"), attached as Exhibit B to the Stipulation, which will:

> (i)     preliminarily approve the proposed Settlement on the terms set forth in the Stipulation;

- 3 -

(ii)     certify the proposed Class solely for purposes of the Settlement;

(iii)     approve the form and content of the Notice, Proof of Claim and Release Form, and Summary Notice attached to the Stipulation as Exhibits A-1, A-2 and A-3, respectively;

(iv)     find that the procedures for distribution of the Notice and Proof of Claim and Release Form and publication of the Summary Notice in the manner and form set forth in the Preliminary Approval Order constitute the best notice practicable under the circumstances, and comply with the notice requirements of due process, Fed. R. Civ. P. 23, and the PSLRA; and

(v)     set a schedule and procedures for disseminating the Notice and Proof of Claim and Release Form; publication of the Summary Notice; requesting exclusion from the Class; objecting to the Settlement, the Plan of Allocation, or the Fee and Expense Application; submission of papers in support of final approval of the Settlement; and the Final Approval Hearing.

## II.     BACKGROUND

### A.     History of the Litigation

This is a securities fraud class action against (1) Diplomat, the country's largest independent specialty pharmacy, whose common stock trades on the New York Stock Exchange ("NYSE"); (2) Philip R. Hagerman, who throughout the Class Period was the Company's Chief Executive Officer and the Chairman of its Board of Directors; and (3) Sean M. Whelan, who throughout the Class Period was the Company's Chief Financial Officer.   The Complaint alleges violations §§10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder by the U.S. Securities and Exchange Commission ("SEC").  Lead Plaintiffs

- 4 -

allege that by the beginning of the Class Period (February 29, 2016 through November 3, 2016), Defendants knew that starting on January 1, 2016, the Company would have to pay a dramatically higher amount in direct and indirect remuneration fees ("DIR Fees") for every specialty pharmaceutical prescription that Diplomat filled for Medicare Part D patients whose insurance carrier contracted with Caremark.  Lead Plaintiffs further allege that Defendants concealed the increase in DIR Fees and failed to record adequate accruals for DIR Fees, rendering Diplomat's financial statements and other disclosures for the first and second quarters of 2016 materially false and misleading.

Mr. Zimmerman commenced the Litigation on November 10, 2016.  ECF No. 1.  Judge O'Meara appointed Lead Plaintiffs and approved their selection of Glancy Prongay & Murray LLP ("GPM") and Robbins Geller Rudman & Dowd LLP ("Robbins Geller") as Lead Counsel, and The Miller Law Firm, P.C. and Vanoverbeke Michaud & Timmony, P.C. as Liaison Counsel.  ECF No. 17.

Lead Counsel conducted a thorough and far-reaching investigation before drafting the Complaint, which was filed on April 11, 2017.  ECF No. 20.  This investigation included, among other things, a review and analysis of: (i) Diplomat's public filings with the SEC; (ii) research reports by securities and financial analysts; (iii) transcripts of Diplomat's earnings conference calls; (iv) news articles about

- 5 -

Diplomat and DIR Fees; (v) an economic analysis of the price movement in Diplomat's common stock; and (vi) other publicly available material and data.

On May 26, 2017, Defendants filed a motion to dismiss the Complaint (ECF No. 23), which Judge O'Meara denied in its entirety (ECF No. 36). Defendants subsequently filed a motion for reconsideration of Judge O'Meara's Order denying the motion to dismiss. ECF No. 39. Two weeks later, the case was reassigned to Judge Avern Cohn (ECF No. 40), and on August 9, 2018, the Court denied Defendants' motion for reconsideration (ECF No. 46).

After the motion to dismiss was denied and the PSLRA's mandatory discovery stay was lifted, the Parties commenced fact discovery. Among other things, Lead Counsel propounded upon Defendants two sets of requests for the production of documents, comprising 58 separate requests; propounded separate sets of interrogatories on Diplomat and the Individual Defendants; served third-party document subpoenas on Caremark, Diplomat's independent auditor, and Diplomat's pharmacy services administrative organization; met and conferred with Defendants and the third-party subpoena recipients on numerous occasions to negotiate the scope of their document requests; analyzed more than 13,000 pages of documents produced by Defendants and third parties; and deposed a senior Diplomat executive on several topics pursuant to Fed. R. Civ. P. 30(b)(6).

- 6 -

On March 7, 2019, Lead Plaintiffs filed a motion for class certification. ECF No. 56.  Before Defendants filed an opposition to class certification, on April 3, 2019, the Parties notified the Court that they had reached an agreement-in-principle to settle the Litigation.  ECF No. 57.

### B.    History of Settlement Negotiations

The Parties engaged in extensive arm's-length negotiations during the course of the Litigation.  On May 28, 2018, following the denial of the motion to dismiss but while the motion for reconsideration was pending, the Parties participated in an in-person mediation session with Judge Phillips.  In advance of that session, Defendants made a limited production of documents to Lead Counsel solely for purposes of mediation, and the Parties exchanged detailed mediation statements and exhibits that addressed issues of liability and damages.  The session ended without a settlement being reached.

In December 2018, the Parties participated  in an in-person mediation session with Judge Cahill. In advance of that session, the Parties provided to Judge Cahill and exchanged detailed and updated mediation statements and exhibits that addressed issues of liability and damages, this time incorporating additional discovery conducted after the Court's denial of the motion for reconsideration.  The session ended without a settlement being reached, and litigation continued.

- 7 -

After further arm's-length negotiations, including communications through Judge Cahill, on April 1, 2019, the Parties accepted Judge Cahill's mediator's proposal to resolve the Litigation for $14.1 million.  The Parties subsequently negotiated the Stipulation (and the exhibits thereto), which sets forth the final and binding agreement to settle the Action, and executed the Stipulation on April 22, 2019, and now present the Settlement to the Court for preliminary approval.

### C.    The Settlement Terms

The Settlement requires Defendants to pay $14.1 million into the Escrow Account, which amount comprises the Settlement Fund.

Notice to the Settlement Class and the cost of settlement administration ("Notice and Administration Costs") will be funded by the Settlement Fund. Stipulation ¶2.7.  Lead Plaintiffs propose a nationally-recognized settlement administrator, Gilardi & Co. LLC ("Gilardi") to be retained subject to the Court's approval.  The proposed plan for notice and claims administration are discussed below in Section IV and in the Declaration of Michael Joaquin Regarding Notice and Administration ("Joaquin Decl."), filed concurrently herewith.

Because the Settlement Fund is a "qualified settlement fund" within the meaning of Treas. Reg. Section 1.468B-1, the income earned on the Settlement Fund

is taxable.  All Taxes and Tax Expenses (such as expenses of tax attorneys and/or accountants) shall be paid out of the Settlement Fund.

Lead Plaintiffs intend to request a total amount not to exceed $15,000, pursuant to 15 U.S.C. §78u-4(a)(4), for their representation of the Class.  Any such amounts the Court awards shall be paid from the Settlement Fund.

Lead Counsel will submit an application with its opening papers in support of final approval of the Settlement for: (a) an award of attorneys' fees in the amount not to exceed 30% of the Settlement Amount; (b) payment of expenses or charges resulting from the prosecution of the Litigation of as much as $300,000; and (c) any interest on such amounts at the same rate and for the same period as earned by the Settlement Fund.  Such fees and expenses shall be paid from the Settlement Fund upon entry of the order awarding such fees and expenses.

Once Notice and Administration Costs, Taxes, Tax Expenses, and Court-approved attorneys' fees and expenses and any award to the Plaintiffs pursuant to 15 U.S.C. §78u-4-(a)(4) have been paid from the Settlement Fund, the remaining amount, *i.e.*, the Net Settlement Fund, shall be distributed pursuant to the Court-approved Plan of Allocation to Authorized Claimants who are entitled to a distribution of at least $10.  The Plan of Allocation treats all Class Members equitably based on the timing of

- 9 -

their Diplomat stock purchases during the Class Period and any sales during the relevant time.

The Parties have entered into a Supplemental Agreement which provides that if prior to the Final Approval Hearing, a certain number of shares which would otherwise be part of the Class requests exclusion from the Class, Defendants have the option to terminate the Settlement. Stipulation ¶8.3.

## III.   ARGUMENT

### A.   Legal Standards

Rule 23(e) requires judicial approval for a compromise of claims brought on a class basis. Fed. R. Civ. P. 23(e) ("The claims . . . of a certified class may be settled . . . only with the court's approval.").   The approval process involves a three-step process: "(1) the court must preliminarily approve the proposed settlement, *i.e.*, the court should determine whether the compromise embodied in the decree is illegal or tainted with collusion; (2) members of the class must be given notice of the proposed settlement; and (3) a hearing must be held to determine whether the decree is fair to those affected, adequate and reasonable." *Tenn. Ass'n of Health Maint. Orgs., Inc. v. Grier*, 262 F.3d 559, 565-66 (6th Cir. 2001).   With respect to the first step, the settlement should be preliminarily approved if it "(1) 'does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment

- 10 -

to class representatives or of segments of the class, or excessive compensation for attorneys,' and (2) 'appears to fall within the range of possible approval.'" *Dallas v. Alcatel-Lucent USA, Inc.*, No. 09-14596, 2013 WL 2197624, at *8 (E.D. Mich. May 20, 2013) (citation omitted).

In conducting its review, a court should take into account "the federal policy favoring settlement of class actions." *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 632 (6th Cir. 2007) (citation omitted); *Griffin v. Flagstar Bancorp, Inc.*, 2013 WL 6511860, at *2 (E.D. Mich. Dec. 12, 2013) ("The Sixth Circuit and courts in this district have recognized that the law favors the settlement of class action lawsuits."). "A preliminary fairness assessment 'is not to be turned into a trial or rehearsal for trial on the merits,' for 'it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements.'" *In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.*, 2001 WL 1842315, at *10 (N.D. Ohio Oct. 20, 2001). The burden during this initial stage is low, and "the goal of preliminary approval is for a court to determine whether notice of the proposed settlement should be sent to the class" 4 William B. Rubenstein, *Newberg on Class Actions* §13:13 (5th ed. 2018). A full evaluation is made at the final approval stage, after notice of the settlement has

- 11 -

been given to the members of the class and they have had an opportunity to voice their views of the settlement.  *See Moore's Federal Practice*, 23.165[3] (3d ed. 2005).

## IV.   Preliminary Approval of the Settlement Should be Granted

### A.   The Settlement is Entitled to a Presumption of Fairness

"A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery."  *New England Health Care Emps. Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 632 (W.D. Ky. 2006); *see also Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983); 4 NEWBERG §13:45.  Moreover, some courts have held that a settlement is "presumptively reasonable at the preliminary approval stage, and there is an accordingly heavy burden of demonstrating otherwise." 4 NEWBERG §13:13; *Brotherton v. Cleveland*, 141 F. Supp. 2d 894, 904 (S.D. Ohio 2001).

Here, the Settlement is presumptively fair and reasonable.  It was the result of arm's-length negotiations by Lead Counsel, who are highly experienced in securities fraud class action litigation.  *See* ECF Nos. 56-2 & 56-3 (firm resumes).  Lead Counsel was well-informed of the strengths and weaknesses of the case based on, among other things, the investigation undertaken before filing the Complaint, briefing the motion to dismiss and motion for reconsideration, review more than 13,000 pages

- 12 -

of documents produced by Defendants and third parties, and conducting a Rule 30(b)(6) deposition of Diplomat.  Finally, the Settlement was the result of the Parties accepting Judge Cahill's mediator's proposal after the Parties had participated in two mediation sessions and engaged in years of litigation.

### B.    The Settlement Does Not Have Any Apparent Deficiencies

The proposed Settlement has no obvious deficiencies.  It does not provide preferential treatment to Lead Plaintiffs or any other Class Members.  Lead Plaintiffs will receive distributions from the settlement proceeds calculated in the same manner as the distributions to other Class Members.  Additionally, the Settlement does not mandate excessive compensation for Lead Counsel.  The proposed Notice to Class Members provides that Lead Counsel will apply for an award of attorneys' fees of up to 30% of the Settlement Fund, plus interest and payment of reasonable litigation costs and expenses.  This percentage "is well within the benchmark range and in line with what is often awarded in this Circuit."  *See Simpson v. Citizens Bank*, No. 12-10267, 2014 WL 12738263, at \*6 (E.D. Mich. Jan. 31, 2014).  *See also Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 2015 U.S. Dist. LEXIS 41968, at \*48 (E.D. Mich. Mar. 31, 2015) (awarding attorneys' fees of one-third of common fund and noting that "the range of reasonableness . . . is from 20 to 50 percent of the common fund").  Accordingly, this factor supports preliminary approval of the proposed Settlement.

- 13 -

### C.    The Settlement Falls Within the Range of Possible Approval

"The determination of a reasonable settlement is not susceptible to mathematical precision.  Rather, there is a range of reasonableness for a settlement, and it should be preliminarily approved if it falls within the range of possible approval."  *Dallas*, 2013 WL 2197624, at *9.  In making this determination, the adequacy of the amount offered in a settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of strengths and weaknesses of plaintiffs' case."  *In re "Agent Orage" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984).

Lead Plaintiffs and Lead Counsel believe that the proposed $14.1 million all-cash settlement represents an excellent result and is in the best interests of the Class. The Settlement provides the Class with a substantial and immediate monetary benefit, and is particularly noteworthy when juxtaposed against the procedural and substantive hurdles that Lead Plaintiffs would have had to overcome to prevail in this complex securities fraud litigation.  For example, Lead Plaintiffs still faced the substantial burdens of a class certification motion, summary judgment motion, trial, and likely appeals – a process which could possibly extend for years and might lead to a smaller recovery, or no recovery at all.  Indeed, even prevailing at trial would not have guaranteed a recovery larger than the $14.1 million settlement.  *See Glickenhaus &*

- 14 -

*Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) (reversing $2.45 billion judgment following jury verdict and remanding for new trial on loss causation and damages); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs reversed on appeal on loss causation grounds and judgment entered for defendant).

Finally, based on the analysis of Lead Plaintiffs' damages expert, if Lead Plaintiffs were able to prevail on liability and ***all*** of their loss causation and damages theories, the maximum damages suffered by the Class is approximately $255.2 million.  This damages amount includes the damages resulting from stock losses on two trading days following alleged corrective disclosures.  However, there is a significant risk that Lead Plaintiffs would not be able to prove loss causation for the second stock drop, which would reduce aggregate damages to $192.7 million.  The Settlement thus represents between 5.5%-7.3% of the Class's maximum recoverable damages, which is well within the range of other securities class action settlements with similar total losses.  *See* Stefan Boettrich and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2018 Full-Year Review* (NERA Jan. 29, 2019) at p.

- 15 -

35, Fig. 27 (for cases alleging investor losses between \$200-\$399 million, median settlement recovery was 2.6%).[2]

## V.  The Class Should be Certified for Settlement Purposes

Lead Plaintiffs also request that the Court certify the proposed Class for purposes of the Settlement under Rule 23(a) and Rule 23(b)(3).  The Parties have stipulated to certification of the following settlement Class: all Persons who purchased Diplomat common stock from February 29, 2016 through and including November 3, 2016.  Stipulation ¶1.4.[3]

Courts acknowledge that "class actions are the most favorable means of adjudicating federal securities fraud claims" and that "[t]he benefits of a class action settlement can be realized only through the certification of the class."  *Castillo v. Envoy Corp*., 206 F.R.D. 464, 474 (M.D. Tenn. 2002); *Filby v. Windsor Mold USA, Inc.*, 13-cv-1582, 2015 WL 1119732, at *1 (N.D. Ohio Mar. 11, 2015).  A settlement class must satisfy all the requirements of Rule 23 except for manageability under Rule

---

[2]

    https://www.nera.com/content/dam/nera/publications/2019/PUB_Year_End_Trends_012819
    _Final.pdf.

[3]     Excluded from the Class are Defendants, members of each Defendant's immediate family, any entity in which any Defendant has or had a controlling interest, directors and senior executive officers of Diplomat during the Class Period, Defendants' legal representatives, heirs, successors, or assigns of any such excluded party; and those Persons who timely and validly request exclusion from the Class pursuant to the Notice.  Stipulation ¶1.4.

- 16 -

23(b)(3).  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 593 (1997).  As Lead Plaintiffs explain more fully in their class certification motion (ECF No. 57), the proposed Class meets all the requirements of Rule 23.

### A.     The Class Satisfies the Prerequisites of Rule 23(a)

### 1.     The Class is Numerous

Class certification under Rule 23(a)(1) is appropriate where a class contains so many members that joinder of all would be "impracticable."  Fed. R. Civ. P. 23(a)(1). "'[N]umerosity is generally assumed to have been met in class action suits involving nationally traded securities.'"  *Willis v. Big Lots, Inc.*, 242 F. Supp. 3d 634, 644 (S.D. Ohio. 2017).

Here, the proposed Class consists of thousands of Diplomat investors. Diplomat's common stock traded on the NYSE and there were approximately 64.5 million shares of Diplomat stock outstanding as of February 26, 2016 and an average of 767,353 shares traded on the NYSE on a daily basis during the Class Period.  *See* ECF No. 56-4 ¶49; *Wilkof v. Caraco Pharm. Labs., Ltd.*, 280 F.R.D. 332, 338 (E.D. Mich. 2012) (finding numerosity satisfied where shares were traded at a rate of between 88,590-100,000 shares per day on average).

- 17 -

**2.     There are Questions of Law and Fact Common to the Class**

The threshold for satisfying commonality is low: a plaintiff need only demonstrate the existence of single class-wide issue capable of generating common answers that will drive the resolution of the litigation.  *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 853 (6th Cir. 2013).

The Class satisfies the Rule 23(a) commonality requirement.  Every Class Member was harmed by the same material misstatements and omissions that concealed the increase of Caremark's 2016 DIR fees assessed on Diplomat and the material adverse impact of that change on Diplomat's financials.  Common questions of law and fact include, *inter alia*: (i) whether Defendants misrepresented material facts; (ii) whether Defendants knew or recklessly disregarded that their statements and omissions were false and misleading; (iii) whether the price of Diplomat's common stock was artificially inflated; and (iv) the extent of damages sustained and the appropriate measure of damages.

Courts in this Circuit have found commonality easily satisfied in securities fraud actions where these issues were present.  *See, e.g.*, *Big Lots*, 242 F. Supp. 3d at 645; *Ross v. Abercrombie & Fitch Co.*, 257 F.R.D. 435, 443 (S.D. Ohio 2009).

- 18 -

### 3. Lead Plaintiffs' Claims are Typical of the Class

A plaintiff's claim is typical "'if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.'" *Wilkof*, 280 F.R.D. at 338-39. The typicality requirement is liberally construed and "'[t]he threshold for satisfying the typicality prong is a low one.'" *Big Lots*, 242 F. Supp. 3d at 645. In cases alleging a common course of conduct or remedial theory, "'[t]he commonality and typicality requirements of Rule 23(a) tend to merge.'" *Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 509 (6th Cir. 2015).

Lead Plaintiffs' claims are typical of the claims of Class Members because they all allege that Defendants violated the Exchange Act by making public statements that misrepresented or omitted material facts. Additionally, their claims are based on their purchases of the same security – Diplomat common stock – during the proposed Class Period. *See Wilkof*, 280 F.R.D. at 341 (claims typical where "[t]hey claim injury stemming from Defendant's alleged false representations and the effect of those false representations on the market").

### 4. Lead Plaintiffs are Adequate

The Sixth Circuit looks at two criteria to determine whether adequacy is met: the representative must (i) "'have common interests with unnamed members of the

- 19 -

class,'" and (ii) be willing to "'vigorously prosecute the interests of the class through qualified counsel.'" *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 543 (6th Cir. 2012).

The first criterion overlaps with typicality and commonality, in that "'[a] class representative must be part of the class and possess the same interest and suffer the same injury as the class members.'" *Id.*; *Big Lots*, 242 F. Supp. 3d at 648. As explained above, Plaintiffs' interest in proving Defendants' liability and maximizing any recovery is directly aligned with the interests of Class members.

The second criterion examines whether the proposed class representative has "'sufficient financial and personal involvement to encourage it to prosecute the action vigorously, and adequate resources and legal representation to meet the demands of maintaining the action. Further, class counsel must be qualified, experienced, and generally able to conduct the litigation.'" *Big Lots*, 242 F. Supp. 3d at 648. Lead Plaintiffs have demonstrated their willingness and ability to serve as Class Representatives through their diligent prosecution of the case thus far. All three Lead Plaintiffs have supervised and monitored the progress of this case. Moreover, Plaintiff

GERS is an institutional investor that has successfully served as a class representative in two other federal securities law actions.[4]

Lead Plaintiffs have also engaged qualified and experienced attorneys who have excellent track records in prosecuting securities class actions. *See* ECF Nos. 56-2 & 56-3 (firm resumes).

## B. The Requirements of Rule 23(b)(3) are also Satisfied

### 1. Common Questions of Law and Fact Predominate

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 564 (6th Cir. 2007). "To satisfy the predominance requirement in Rule 23(b)(3), 'a plaintiff must establish that 'the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof.'" *Id.* As the Supreme Court has noted, predominance is a test "readily met" in cases alleging securities fraud. *Amchem*, 521 U.S. at 625.

The predominance test is met here because Lead Plaintiffs allege a "common course of conduct" of misrepresentations, omissions and other wrongdoings that affect

---

[4]    *See Local 703, I.B. v. Regions Fin. Corp.*, 282 F.R.D. 607, 615-17 (N.D. Ala. 2012), *aff'd in relevant part and vacated on other grounds*, 762 F.3d 1248, 1260-61 (11th Cir. 2014); *La. Mun. Police Ret. Sys. v. Green Mountain Coffee Roasters, Inc.*, 2017 WL 3149424 (D. Vt. July 21, 2017).

1555868_1

all members of the Class in the same manner.  *See Salvagne v. Fairfield Ford, Inc*., 264 F.R.D. 321, 329 (S.D. Ohio 2009) ("Cases alleging a single course of wrongful conduct are particularly well-suited to class certification.").  Because Lead Plaintiffs can demonstrate Defendants' liability using generalized proof on a class-wide basis, and because the core issues outweigh any hypothetical individual ones, the predominance requirement is satisfied.

Almost all of the elements of Plaintiffs' §10(b) claim – namely, misleading statement or omission, materiality, scienter, and loss causation – are subject to classwide proof and not required to be established at the class certification stage.  *See Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 469-70 (2013); *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011); *Schleicher v. Wendt*, 618 F.3d 679, 687 (7th Cir. 2010).  In addition, the Class is entitled to a presumption of reliance under the fraud-on-the-market doctrine.  *See* ECF No. 56 at 27-34 (showing that requirements for invoking the presumption are met).

### 2.     A Class Action is a Superior Method for Adjudicating the Claims at Issue

Rule 23(b)(3) sets forth the following non-exhaustive factors to be considered in making a determination of whether class certification is the superior method of litigation: "(A) the class members' interests in individually controlling the prosecution

1555868_1

. . . of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by . . . class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." *See* Fed. R. Civ. P. 23(b)(3).

It is well recognized that "securities fraud actions are particularly well suited for class certification due to the predominance of common issues of fact and the impracticability of bringing individual actions." *Ross*, 257 F.R.D. at 455; *see also In re Direct Gen. Corp.*, No. 05-0077, 2006 WL 2265472, at *7 (M.D. Tenn. Aug. 8, 2006). Accordingly, securities cases "easily satisfy the superiority requirement of Rule 23." *In re NYSE Specialists Sec. Litig.*, 260 F.R.D. 55, 80 (S.D.N.Y. 2009).

Here, class certification is the only way to afford relief to those whose claims are simply too small to justify individual lawsuits. Further, the nationwide geographical dispersion of Class Members, due to the availability of Diplomat's common stock on a national exchange, makes a class action resolution superior to other methods for adjudication. Because individual litigation of each Class Member's claims would be highly inefficient and impracticable, a class action is the superior means of adjudicating this action.

- 23 -

## VI.    The Form and Process of Notice to the Class Should be Approved

As outlined in the Parties' agreed-upon proposed Preliminary Approval Order

and the accompanying Joaquin Declaration, should the Court grant preliminary

approval, the Claims Administrator will mail the Notice and Proof of Claim Form

(Exhibits A-1 and A-2 to the Stipulation) to Class Members who can be identified

with reasonable effort, including through shareholder transfer records provided by

Diplomat containing the names and addresses of record holders who purchased

Diplomat common stock during the Class Period.[5]  The Claims Administrator will

also use a list of the largest and most common U.S. banks, brokerage firms, and

nominees that purchase securities on behalf of beneficial owners to facilitate

dissemination of the notice.  Joaquin Decl. ¶¶8-10.  Gilardi will maintain a website

where key documents are posted regarding the Settlement, claims may be submitted

through an online portal, and frequently asked questions may be answered.  Gilardi

will also maintain a toll-free telephone number which Class Members can call to make

inquiries about the Settlement or to obtain documents.  *Id.*at ¶16-17.  Additionally,

Lead Counsel will cause the Summary Notice (Exhibit A-3 to the Stipulation) to be

---

[5]      Lead Plaintiffs request that the Court approve the retention of Gilardi & Co. LLC as the
Claims Administrator for this Settlement.

published once in *The Wall Street Journal* and transmitted over a national newswire service.

The Notice will advise Class Members of the pendency of the Action, the essential terms of the Settlement, Lead Counsel's forthcoming Fee and Expense Application,[6] and the proposed Plan of Allocation for distributing the Net Settlement Fund. The Notice will further detail: (i) the procedures for objecting to the Settlement, the Plan of Allocation, or the Fees and Expense Application; (ii) how Class Members can exclude themselves from (*i.e.*, opt out of) the Class; and (iii) the date, time, and location of the Final Approval Hearing.

The form and manner of providing notice to the Class satisfy the requirements of due process, Rule 23, and the PSLRA. *See Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008) (confirming that similar notice program comports with due process and Fed. R. Civ. P. 23).

The claims process is also effective and includes a standard claim form which requests the information necessary to calculate a claimant's claim amount pursuant to the Plan of Allocation. The Plan of Allocation will govern how Class Members'

---

[6]     As explained in the Notice, Lead Counsel will apply to the Court for an award of attorneys' fees in an amount not to exceed 30% of the Settlement Fund, plus interest, and for litigation expenses in an amount not to exceed $300,000). In accordance with the PSLRA, Lead Counsel will also request the reimbursement of reasonable costs and expenses incurred by Lead Plaintiffs directly related to their representation of the Class.

claims will be calculated and how money will be distributed to Authorized Claimants. The Plan of Allocation was prepared with the assistance of Plaintiffs' damages consultant and tracks Plaintiffs' theories of the case and the statutory provisions of the PSLRA. It is substantively the same as plans that have been approved and successfully used to allocate recoveries in other securities class actions.[7] A thorough claim review process, including how deficiencies are addressed, is explained in the Joaquin Declaration. *See* ¶¶25-27.

## VII. The Parties' Proposed Schedule of Settlement Events Should be Approved

Lead Plaintiffs respectfully propose the schedule set forth below for Settlement-related events. The timing of events is determined by the date the Preliminary Approval Order is entered and the date the Final Approval Hearing is scheduled. If the Court agrees with the proposed schedule, Lead Plaintiffs request that the Court schedule the Final Approval Hearing on a date that is at least 100 calendar days after the date of entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter.

---

[7]     There is no reversion to Defendants of any unclaimed funds.

| Event | Proposed Timing |
|---|---|
| Deadline for mailing the Notice and Claim Form to Class Members (which date shall be the "Notice Date") (Preliminary Approval Order ¶7(a)) | 21 calendar days after the Court enters the Preliminary Approval Order |
| Deadline for publishing the Summary Notice (Preliminary Approval Order ¶7(b)) | 7 calendar days after the Notice Date |
| Deadline for filing of papers in support of final approval of the Settlement, Plan of Allocation, and Fees and Expense Application (Preliminary Approval Order ¶18) | 35 calendar days before the Final Approval Hearing |
| Deadline for receipt of exclusion requests or objections (Preliminary Approval Order ¶¶12, 15) | 21 calendar days before the Final Approval Hearing |
| Deadline for filing reply papers in support of final approval of the Settlement, Plan of Allocation, and Fees and Expense Application(Preliminary Approval Order ¶18) | 7 calendar days before the Final Approval Hearing |
| Final Approval Hearing (Preliminary Approval Order ¶3) | At the Court's convenience at least 100 calendar days after the Court enters the Preliminary Approval Order |
| Deadline for submitting Claim Forms (Preliminary Approval Order ¶11) | 120 calendar days after the Notice Date |

## VIII. CONCLUSION

For the foregoing reasons, Lead Plaintiffs respectfully request that the Court (a) preliminarily approve the Settlement set forth in the Stipulation; (b) certify the Class for settlement purposes; (c) approve the form and manner of providing notice to the Class; and (d) set a hearing date for final approval of the Settlement.

- 27 -

1555868_1

DATED:  April 22, 2019

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
ELLEN GUSIKOFF STEWART
JONAH H. GOLDSTEIN
MATTHEW I. ALPERT
HILLARY B. STAKEM
ALEXI H. PFEFFER-GILLETT


            s/Matthew I. Alpert
           MATTHEW I. ALPERT

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

GLANCY PRONGAY & MURRAY LLP
LIONEL Z. GLANCY
JOSHUA L. CROWELL
1925 Century Park East, Suite 2100
Los Angeles, CA  90067
Telephone:  310/201-9150
310/201-9160 (fax)

Counsel for Lead Plaintiffs and the Class

- 28 -

VANOVERBEKE MICHAUD &
  TIMMONY, P.C.
MICHAEL J. VANOVERBEKE (P42641)
THOMAS C. MICHAUD (P46787)
79 Alfred Street
Detroit, MI  48201
Telephone:  313/578-1200
313/578-1201 (fax)
mvanoverbeke@vmtlaw.com
tmichaud@vmtlaw.com

THE MILLER LAW FIRM, P.C.
E. POWELL MILLER (P39487)
SHARON S. ALMONRODE (P33938)
950 W. University Dr., Suite 300
Rochester, MI  48307
Telephone:  248/841-2200
248/652-2852 (fax)
mln@millerlawpc.com
ssa@millerlawpc.com

Liaison Counsel for the Class

1555868_1

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on April 22, 2019, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ MATTHEW I. ALPERT
MATTHEW I. ALPERT
ROBBINS GELLER RUDMAN
    & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:  MAlpert@rgrdlaw.com

1556087_1

## Mailing Information for a Case 2:16-cv-14005-AC-SDD Zimmerman v. Diplomat Pharmacy, Inc. et al

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Sharon S. Almonrode**
  ssa@millerlawpc.com,djv@ecf.courtdrive.com,djv@millerlawpc.com,ssa@ecf.courtdrive.com,sab@miller.law,sab@ecf.courtdrive.com

- **Matthew I. Alpert**
  malpert@rgrdlaw.com,kathyj@rgrdlaw.com,HStakem@rgrdlaw.com,e_file_sd@rgrdlaw.com,kwoods@rgrdlaw.com

- **Joshua L. Crowell**
  JCrowell@glancylaw.com,joshua-crowell-3496@ecf.pacerpro.com,info@glancylaw.com,VMesropyan@glancylaw.com

- **James W. Ducayet**
  jducayet@sidley.com,james-ducayet-9115@ecf.pacerpro.com,zalam@sidley.com,efilingnotice@sidley.com

- **Jonah H. Goldstein**
  jonahg@rgrdlaw.com

- **Nicholas B Gorga**
  ngorga@honigman.com,litdocket@honigman.com,cwalmsley@honigman.com

- **Thomas C. Michaud**
  tmichaud@vmtlaw.com

- **E. Powell Miller**
  epm@millerlawpc.com,aad@miller.law,aad@ecf.courtdrive.com,sab@miller.law,sab@ecf.courtdrive.com

- **Andrew M. Pauwels**
  apauwels@honigman.com,litdocket@honigman.com,ahatcher@honigman.com

- **Alexi Harry Pfeffer-Gillett**
  agillett@rgrdlaw.com

- **Nilofer I. Umar**
  numar@sidley.com,efilingnotice@sidley.com,nilofer-umar-6698@ecf.pacerpro.com,dgeiger@sidley.com

### Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)