UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

| | | |
|---|---|---|
| DAVID N. ZIMMERMAN, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | Civ. No. 2:16-cv-14005-AC-SDD |
| | ) | Hon. Avern Cohn |
| Plaintiff, | ) ) | <u>CLASS ACTION</u> |
| vs. | ) ) | LEAD PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS |
| DIPLOMAT PHARMACY, INC., et al., | ) ) | ACTION SETTLEMENT, CLASS CERTIFICATION AND APPROVAL |
| Defendants. | ) ) | OF PLAN OF ALLOCATION |
| | ) | |

Lead Plaintiffs David N. Zimmerman, William Kitsonas, and the Government Employees' Retirement System of the Virgin Islands ("Lead Plaintiffs") respectfully move the Court for final approval of the Settlement, certification of the Class for settlement purposes, and approval of the Plan of Allocation.  The terms and conditions of the Settlement are set forth in the Stipulation of Settlement (the "Stipulation") (ECF No. 60).

In support of the motion, Lead Plaintiffs rely on the accompanying Memorandum of Law, the Joint Declaration of Matthew I. Alpert and Joshua L. Crowell, Lead Plaintiffs' declarations, the Declaration of Carole K. Sylvester, the Stipulation, all of the prior pleadings and papers in this Litigation, and such additional evidence or argument as may be required by the Court.  Proposed orders will be submitted with Lead Plaintiffs' reply submission on or before August 13, 2019.

DATED:  July 16, 2019      ROBBINS GELLER RUDMAN
             & DOWD LLP
           ELLEN GUSIKOFF STEWART
           JONAH H. GOLDSTEIN
           MATTHEW I. ALPERT
           HILLARY B. STAKEM
           ALEXI H. PFEFFER-GILLETT

              s/Matthew I. Alpert
             MATTHEW I. ALPERT

- 1 -

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

GLANCY PRONGAY & MURRAY LLP
LIONEL Z. GLANCY
JOSHUA L. CROWELL
1925 Century Park East, Suite 2100
Los Angeles, CA  90067
Telephone:  310/201-9150
310/201-9160 (fax)

Counsel for Lead Plaintiffs and the Class

VANOVERBEKE MICHAUD &
   TIMMONY, P.C.
MICHAEL J. VANOVERBEKE (P42641)
THOMAS C. MICHAUD (P46787)
79 Alfred Street
Detroit, MI  48201
Telephone:  313/578-1200
313/578-1201 (fax)
mvanoverbeke@vmtlaw.com
tmichaud@vmtlaw.com

THE MILLER LAW FIRM, P.C.
E. POWELL MILLER (P39487)
SHARON S. ALMONRODE (P33938)
950 W. University Dr., Suite 300
Rochester, MI  48307
Telephone:  248/841-2200
248/652-2852 (fax)
mln@millerlawpc.com
ssa@millerlawpc.com

Liaison Counsel for the Class

- 2 -

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

| | | |
|---|---|---|
| DAVID N. ZIMMERMAN, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | Civ. No. 2:16-cv-14005-AC-SDD |
| | ) | Hon. Avern Cohn |
| Plaintiff, | ) ) | CLASS ACTION |
| vs. | ) ) | MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS' |
| DIPLOMAT PHARMACY, INC., et al., | ) ) | MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, |
| Defendants. | ) ) | CLASS CERTIFICATION AND APPROVAL OF PLAN OF |
| | ) | ALLOCATION |

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ....................................................................................2

II.    FACTUAL AND PROCEDURAL HISTORY ................................................4

III.   THE SETTLEMENT WARRANTS FINAL APPROVAL ............................5

    A.    Legal Standards for Final Approval of Class Action Settlement..........5

    B.    The Rule 23 and Sixth Circuit Factors Support Approval...................7

        1.    The Class Was Adequately Represented ...................................7

        2.    The Absence of Fraud or Collusion Favors Approval...............9

        3.    The Relief Provided to the Class Is Adequate .........................10

            a.    The Complexity, Expense and Likely Duration of the Litigation................................................................10

            b.    The Likelihood of Success on the Merits.......................12

        4.    The Stage of Proceedings and Amount of Discovery Engaged in By the Parties Supports Approval ........................16

        5.    Lead Counsel and Lead Plaintiffs Endorse the Settlement.......17

        6.    The Reaction of the Class Supports Final Approval ...............18

        7.    Public Interest Favors Approval of the Settlement..................18

        8.    Other Rule 23(e)(2) Factors Support Final Approval..............19

IV.    THE PLAN OF ALLOCATION IS FAIR AND REASONABLE...............21

V.     THE COURT SHOULD FINALLY CERTIFY THE CLASS ....................22

VI.    THE NOTICE OF SETTLEMENT SATISFIES RULE 23 AND DUE PROCESS REQUIREMENTS ......................................................23

VII.   CONCLUSION......................................................................................25

# TABLE OF AUTHORITIES

**Page**

## CASES

*Arledge v. Domino's Pizza, Inc.*,
   2018 WL 5023950 (S.D. Ohio Oct. 17, 2018) .................................................10

*Armstrong v. Gallia Metro. Hous. Auth.*,
   2001 WL 1842452 (S.D. Ohio Apr. 20, 2001)..................................................17

*Brotherton v. Cleveland*,
   141 F. Supp. 2d 894 (S.D. Ohio 2001) .............................................................18

*Carson v. Am. Brands, Inc.*,
   450 U.S. 79 (1981)...............................................................................................7

*Erica P. John Fund, Inc. v. Halliburton Co.*,
   2015 WL 10714013 (5th Cir. Nov. 4, 2015) .....................................................13

*Erica P. John Fund, Inc. v. Halliburton Co.*,
   2018 WL 1942227 (N.D. Tex. Apr. 25, 2018) ..................................................21

*Fidel v. Farley*,
   534 F.3d 508 (6th Cir. 2008) .............................................................................23

*Glickenhaus & Co. v. Household Int'l, Inc.*,
   787 F.3d 408 (7th Cir. 2015) .............................................................................13

*Hefler v. Wells Fargo & Co.*,
   2018 WL 6619983 (N.D. Cal. Dec. 18, 2018).....................................................6

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
   2011 WL 1585605 (S.D. Fla. Apr. 25, 2011),
   *aff'd sub nom. Hubbard v. BankAtlantic Bancorp, Inc.*,
   688 F.3d 713 (11th Cir. 2012) ..........................................................................13

*In re Broadwing, Inc.*,
   252 F.R.D. 369 (S.D. Ohio 2006).....................................................................19

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001) .......................................................................14, 15

*In re Delphi Corp. Sec.*,
    248 F.R.D. 483 (E.D. Mich. 2008) ....................................................................11

*In re Omnivision Techs.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2007) .............................................................13

*In re Packaged Ice Antitrust Litig.*,
    2011 WL 6209188 (E.D. Mich. Dec. 13, 2011) ............................................9, 21

*In re Polaroid ERISA Litig.*,
    240 F.R.D. 65 (S.D.N.Y. 2006) ...........................................................................8

*In re Prandin Direct Purchaser Antitrust Litig.*,
    2015 WL 1396473 (E.D. Mich. Jan. 20, 2015) .................................................11

*In re ProQuest Co. Sec. Litig.*,
    2009 WL 10702449 (E.D. Mich. Mar. 30, 2009) ..............................................20

*In re Se. Milk Antitrust Litig.*,
    2013 WL 2155379 (E.D. Tenn. May 17, 2013) .................................................18

*In re Vivendi Universal, S.A. Sec. Litig.*,
    765 F. Supp. 2d 512 (S.D.N.Y. 2011) ...............................................................13

*In re Xcel Energy, Inc., Sec., Deriv. & "ERISA" Litig.*,
    364 F. Supp. 2d 980 (D. Minn. 2005) ................................................................13

*IUE-CWA v. GMC*,
    238 F.R.D. 583 (E.D. Mich. 2006) ....................................................................17

*New Eng. Health Care Emps. Pension Fund v. Fruit of the Loom, Inc.*,
    234 F.R.D. 627 (W.D. Ky. 2006),
    *aff'd sub nom. Fidel v. Farley*, 534 F.3d 508
    (6th Cir. 2008) ....................................................................................................11

*New York State Teachers' Ret. Sys. v. GM Co.*,
    315 F.R.D. 226 (E.D. Mich. 2016) ............................................................*passim*

*Robbins v. Koger Props.*,
    116 F.3d 1441 (11th Cir. 1997) .........................................................................13

- iii -

*Robinson v. Shelby Cnty. Bd. of Educ.*,
   566 F.3d 642 (6th Cir. 2009) ................................................................5

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007).........................................................................18

*UAW v. GMC*,
   497 F.3d 615 (6th Cir. 2007) ......................................................*passim*

*Whitford v. First Nationwide Bank*,
   147 F.R.D. 135 (W.D. Ky. 1992) ................................................7, 19

*Young v. Nationwide Mut. Ins. Co.*,
   693 F.3d 532 (6th Cir. 2012) ...............................................................8

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
   §78u-4(a)(7) .............................................................................23, 24

Federal Rules of Civil Procedure
   Rule 23 ..............................................................................*passim*
   Rule 23(a).....................................................................1, 22, 25
   Rule 23(b)(3).................................................................1, 22, 25
   Rule 23(c)(2)(B)...........................................................23, 24, 25
   Rule 23(e)..........................................................................1, 2, 6
   Rule 23(e)(1)...........................................................................23
   Rule 23(e)(2).....................................................................5, 6, 19
   Rule 23(e)(2)(A)........................................................................7
   Rule 23(e)(2)(B)........................................................................9
   Rule 23(e)(2)(C)......................................................................10
   Rule 23(e)(2)(C)(ii)................................................................19
   Rule 23(e)(2)(C)(iii) ..............................................................19
   Rule 23(e)(2)(C)(iv)...............................................................19
   Rule 23(e)(2)(D) .....................................................................19
   Rule 23(e)(3).............................................................................6

4813-7513-1548.v1

**SECONDARY AUTHORITIES**

Stefan Boettrich and Svetlana Starykh, *Recent Trends in Securities
    Class Action Litigation: 2018 Full-Year Review*
    (NERA 29 Jan. 2019)...........................................................................................15

4813-7513-1548.v1

## STATEMENT OF ISSUES PRESENTED

1.     Whether the Court should approve the proposed settlement of this securities class action, which involves payment of $14,100,000 in cash for the benefit of the Class, as fair, reasonable, and adequate under Federal Rule of Civil Procedure 23(e).

2.     Whether the Court should approve the proposed Plan of Allocation as fair and reasonable.

3.     Whether the Court should finally certify the litigation as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) for purposes of effectuating the Settlement only.

## CONTROLLING OR MOST APPROPRIATE AUTHORITIES

**Cases**

*UAW v. GMC*, 497 F.3d 615 (6th Cir. 2007)

**Rules**

Federal Rule of Civil Procedure 23

- 1 -

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Court-appointed Lead Plaintiffs David N. Zimmerman, William Kitsonas, and the Government Employees' Retirement System of the Virgin Islands ("GERS") ("Lead Plaintiffs") respectfully submit this memorandum in support of their motion for: (i) final approval of the proposed settlement of this securities class action; (ii) approval of the proposed Plan of Allocation; and (iii) final certification of the Class that the Court preliminarily certified in its Preliminary Approval Order.  *See* ECF No. 62.[1]

## I.   INTRODUCTION

Lead Plaintiffs, through their counsel, have obtained a $14.1 million cash settlement for the benefit of the Class in exchange for the dismissal and full release of all claims brought against Defendants in this Litigation.  As described below and in the Joint Declaration, the Settlement is a very good result for the Class, providing a significant and certain recovery in a case that presented numerous hurdles and risks.

---

[1]   Unless otherwise noted, capitalized terms have the meanings ascribed to them in the Stipulation of Settlement dated April 22, 2019 (the "Stipulation") (ECF No. 60) or in the accompanying Joint Declaration of Matthew I. Alpert and Joshua L. Crowell in Support of: (A) Lead Plaintiffs' Motion for Final Approval of Class Action Settlement, Class Certification, and Approval of Plan of Allocation; and (B) Lead Counsel's Motion for an Award of Attorneys' Fees, Litigation Costs and Expenses and Awards to Lead Plaintiffs Pursuant to 15 U.S.C. §78u-4(a)(4) (the "Joint Declaration" or "Joint Decl.").   All citations to "¶__" and "Ex. __" in this memorandum refer, respectively, to paragraphs in, and Exhibits to, the Joint Declaration.  Unless otherwise noted, all internal citations and quotations have been omitted and emphasis has been added.

4813-7513-1548.v1

In fact, the Settlement represents between 5.5% and 7.3% of the Class's *maximum* estimated recoverable damages, an extremely favorable result when compared to the median securities class action settlement. *See* ¶58 and Ex. 1.

Lead Plaintiffs' decision to settle the Litigation was well-informed by an extensive investigation, hard-fought litigation by experienced counsel, substantial discovery efforts, and arm's-length negotiations supervised by experienced mediators. While Lead Plaintiffs believe that their claims had merit, they also recognize that had the Litigation continued, they faced substantial risks to obtaining any recovery for the Class, let alone a recovery greater than that afforded by the Settlement. Specifically, in addition to the inherent risks related to establishing Defendants' liability, when the Settlement was reached, Lead Plaintiffs' motion for class certification was pending and thus there was the risk that the Class would not be certified. A loss at the class certification stage would necessarily mean that recovery for the Class would be impossible. Moreover, even if Lead Plaintiffs overcame these hurdles, there was the added risk of Diplomat's ability to pay. While the Company was well-funded at the outset of the Litigation, by the time the Settlement was reached, Diplomat had lost approximately 60% of its market value and had very little available cash. Continued litigation also would have risked exhaustion of any insurance.

- 3 -

In light of these considerations, Lead Plaintiffs and Lead Counsel believe that the $14.1 million Settlement is eminently fair, reasonable and adequate, easily satisfies the standards of approval under Fed. R. Civ. P. 23, and provides a very favorable result for the Class. The reaction of the Class thus far also supports the Settlement. As discussed below, potential Class Members have been notified of the Settlement in accordance with the Preliminary Approval Order and, to date, none have objected to any aspect of the Settlement.[2] Accordingly, Lead Plaintiffs respectfully request that the Court grant final approval of the Settlement and grant final certification of the Class for purposes of effectuating the Settlement.

Lead Plaintiffs also request that the Court approve the proposed Plan of Allocation, which was set forth in the Notice sent to Class Members. This Plan was prepared in consultation with Lead Plaintiffs' damages expert and governs how claims will be calculated and, ultimately, how the Net Settlement Fund will be equitably distributed to Authorized Claimants.

## II.    FACTUAL AND PROCEDURAL HISTORY

The Joint Declaration is an integral part of this submission, and for the sake of brevity in this memorandum, the Court is respectfully referred to it for a detailed description of, *inter alia*: the history of the Litigation and Lead Counsel's efforts

---

[2]    Lead Counsel will address any objections in their reply papers, due August 13, 2019.

- 4 -

(¶¶22-49); the negotiations leading to the Settlement (¶¶50-52); and the risks and uncertainties of continued litigation (¶¶56, 58).

## III.   THE SETTLEMENT WARRANTS FINAL APPROVAL

### A.   Legal Standards for Final Approval of Class Action Settlement

Rule 23 requires judicial approval for any compromise or settlement of class action claims and states that a class action settlement should be approved if the court finds it "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). It is well settled within the Sixth Circuit that "federal policy favor[s] settlement of class actions." *UAW v. GMC*, 497 F.3d 615, 632 (6th Cir. 2007). "'Settlement agreements should therefore be upheld whenever equitable and policy considerations so permit.'" *Robinson v. Shelby Cnty. Bd. of Educ*., 566 F.3d 642, 648 (6th Cir. 2009).

On December 1, 2018, amendments to Rule 23(e)(2) went into effect that provide the Court with four specific factors to consider when determining whether a proposed settlement is "fair, reasonable, and adequate":

(A)   the class representatives and class counsel have adequately represented the class;

(B)   the proposal was negotiated at arm's length;

(C)   the relief provided for the class is adequate, taking into account:

(i)   the costs, risks, and delay of trial and appeal;

(ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorneys' fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D)    the proposal treats class members equitable relative to each other.

Fed. R. Civ. P. 23(e)(2).  The Rule 23(e) factors are not intended to "displace" any previously adopted factors, but "rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal."  Advisory Committee Notes to the 2018 Amendments to the Federal Rules of Civil Procedure.  "Accordingly, the Court [should] appl[y] the framework set forth in Rule 23, while continuing to draw guidance from the [Sixth] Circuit's factors and relevant precedent."  *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *4 (N.D. Cal. Dec. 18, 2018).

To evaluate the substantive fairness of the settlement, courts in the Sixth Circuit have considered the following factors in determining whether a class action settlement should be approved:

(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of

class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*UAW*, 497 F.3d at 631.

These factors should not be applied in a "formalistic" fashion. *Whitford v. First Nationwide Bank*, 147 F.R.D. 135, 140 (W.D. Ky. 1992). In considering these factors, the task of the court "is not to decide whether one side is right or even whether one side has the better of these arguments. . . . The question rather is whether the parties are using settlement to resolve a legitimate legal and factual disagreement." *UAW*, 497 F.3d at 632. Courts "'judge the fairness of a proposed compromise,'" "'weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement,'" as opposed to deciding the merits of the case or resolving unsettled legal questions. *Id.* at 631 (quoting *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981)). Likewise, "'[t]he district court enjoys wide discretion in assessing the weight and applicability of these factors.'" *New York State Teachers' Ret. Sys. v. GM Co.*, 315 F.R.D. 226, 236 (E.D. Mich. 2016).

## B.   The Rule 23 and Sixth Circuit Factors Support Approval

### 1.   The Class Was Adequately Represented

Rule 23(e)(2)(A) requires the Court to consider whether the "class representatives and class counsel have adequately represented the class." The Sixth Circuit looks at two criteria to determine whether adequacy is met: the representative

- 7 -

must (i) "'have common interests with unnamed members of the class,'" and (ii) be willing to "'vigorously prosecute the interests of the class through qualified counsel.'" *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 543 (6th Cir. 2012).

These requirements have been met. Lead Plaintiffs' claims are typical of and co-extensive with the claims of the Class, and they have no antagonistic interests; rather, Lead Plaintiffs' interest in obtaining the largest-possible recovery in this Litigation is aligned with the other Class Members. *See In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members."). Additionally, Lead Plaintiffs were highly involved in each stage of the Litigation and worked closely with Lead Counsel throughout the pendency of this action to achieve the best possible result for themselves and the Class.[3] ¶85.[4]

Lead Counsel have also adequately represented the Class. Lead Counsel are highly experienced in securities litigation, with long and successful track records

---

[3]   Lead Plaintiff Zimmerman initiated the Litigation and has been involved since even before the initial complaint was filed.

[4]   *See also* Declaration of David N. Zimmerman, ¶7 ("Zimmerman Decl."); Declaration of William Kitsonas, ¶7 ("Kitsonas Decl."); and Declaration of Austin Nibbs as Representative of GERS, ¶3 ("GERS Decl."), submitted herewith.

- 8 -

representing investors in cases in courts throughout the country.  *See* Declaration of Matthew I. Alpert Filed on Behalf of Robbins Geller Rudman & Dowd LLP, Ex. F; and Declaration of Joshua L. Crowell Filed on Behalf of Glancy Prongay & Murray LLP, Ex. C, submitted herewith.  Here, Lead Counsel incurred over $225,000 in expenses and expended over 4,700 hours during a span of over two years vigorously pursuing the Litigation.  ¶¶22-52.  Accordingly, this factor is easily satisfied and warrants final approval.  *See UAW*, 497 F.3d at 626 (representation was adequate because lead counsel "was willing to, and indeed did, commit substantial resources . . . to represent the class").

### 2.      The Absence of Fraud or Collusion Favors Approval

Rule 23(e)(2)(B) and the first *UAW* factor, which analyze whether the Settlement was reached at arm's length and without fraud or collusion, also support approval.  "'Courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered.'"  *In re Packaged Ice Antitrust Litig.*, 2011 WL 6209188, at *14 (E.D. Mich. Dec. 13, 2011).

Here, the proposed Settlement was reached after over two years of litigation, with both sides vigorously advocating their respective positions.  Indeed, the Settlement was reached only after arm's-length negotiations facilitated by two

- 9 -

experienced and well-respected mediators – U.S. District Judge Layn R. Phillips (Ret.) and San Francisco Superior Court Judge William Cahill (Ret.).  ¶¶51-52.  The Settlement negotiations were extensive, and included the exchange of multiple briefs, two separate in-person mediation sessions, and months of follow up discussions with the assistance of Judge Cahill.  *Id.*  The Parties' negotiation efforts spanned nearly a year and they ultimately agreed to settle only after Judge Cahill provided a mediator's proposal.  ¶52.  As such, the Settlement warrants approval given that the "'participation of an independent mediator [which] virtually insures that the negotiations were conducted at arm's length and without collusion.'"  *See Arledge v. Domino's Pizza, Inc.*, 2018 WL 5023950, at *2 (S.D. Ohio Oct. 17, 2018).

### 3.    The Relief Provided to the Class Is Adequate

Under Rule 23(e)(2)(C), the Court must consider whether the relief provided for the class is adequate, taking into account "the costs, risks, and delay of trial and appeal" and other factors.  This factor essentially incorporates the second and fourth *UAW* factors: (i) the complexity, expense and likely duration of the litigation; and (ii) the likelihood of success on the merits.  Each of these factors supports approval.

### a.    The Complexity, Expense and Likely Duration of the Litigation

"Courts have consistently held that the expense and possible duration of litigation are major factors to be considered in evaluating the reasonableness of a

- 10 -

settlement." *In re Delphi Corp. Sec.*, 248 F.R.D. 483, 497 (E.D. Mich. 2008).  Most class actions are "'inherently complex'" and "'settlement avoids the costs, delays, and multitude of other problems associated with them.'" *In re Prandin Direct Purchaser Antitrust Litig.*, 2015 WL 1396473, at *2 (E.D. Mich. Jan. 20, 2015) (Cohn, J.). Indeed, courts have consistently recognized that "'[s]ecurities class actions are often difficult and . . . uncertain.'" *See, e.g.*, *New Eng. Health Care Emps. Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 631 (W.D. Ky. 2006), *aff'd sub nom. Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008).

There is no doubt that this Litigation involves complex issues relating to falsity, scienter, loss causation, and damages.  The case also involves alleged accounting violations, which involve technical and complex analysis, necessitating significant expert testimony and analysis.  Indeed, Lead Counsel would have to retain experts to consult and potentially provide testimony regarding these matters, which would have been hotly contested at both summary judgment and trial.

Additionally, the case was filed over two years ago.  When the case settled, Defendants and third parties had collectively produced thousands of documents totaling approximately 20,000 pages (¶¶42-43); a Rule 30(b)(6) deposition had been taken and many more depositions had yet to occur (¶¶46-47); the putative class had not yet been certified (¶49); and expert reports relevant to the merits of the claims had

- 11 -

yet to be exchanged.  Thus, without this Settlement, further judicial and party resources would continue to be expended – through additional fact and expert discovery, further class certification briefing, dispositive motion practice, pre-trial preparation, and post-trial appeals.  *See GM*, 315 F.R.D. at 236 (approving settlement where further litigation would have been "extensive" and "protracted").  "As the Settlement provides an immediate, significant, and certain recovery for Class members, this factor favors the Court's approval of the Settlement."  *Id.*

### b.    The Likelihood of Success on the Merits

When considering this factor, the Court must balance the likelihood of success on the merits against the relief offered in the Settlement.  *UAW*, 497 F.3d at 631.

Lead Plaintiffs are confident in their case and believe that the evidence would establish that the increase in Caremark's DIR fees was material information, that the increase was not adequately disclosed, and that when it was ultimately disclosed, Diplomat's stock price declined, causing damage to Class Members.  Nevertheless, Lead Plaintiffs are also cognizant of the fact that there was certainly no guarantee that Lead Plaintiffs would prevail if the case proceeded to summary judgment or trial. Indeed, "[p]recedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet have lost

- 12 -

the case despite their advocacy." *In re Xcel Energy, Inc., Sec., Deriv. & "ERISA" Litig.*, 364 F. Supp. 2d 980, 994 (D. Minn. 2005).[5]

Here, as detailed in the Joint Declaration, there were numerous potential defenses available to Defendants that could delay, or preclude entirely, any recovery by the Class.  ¶¶56, 58.  For example, Defendants would undoubtedly oppose class certification.  And, even if a class was certified, "there is no guarantee the certification would survive through trial, as Defendants might have sought decertification or modification of the class."  *See, e.g.*, *In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2007).  Lead Plaintiffs also would have faced significant hurdles on the merits.  Defendants would challenge whether the alleged misstatements and

---

[5]   *See, e.g.*, *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) (vacating $2.46 billion PSLRA judgment against securities fraud defendants and remanding for a new trial on limited issues); *Robbins v. Koger Props.*, 116 F.3d 1441, 1448-49 (11th Cir. 1997) (reversal on loss causation grounds of $81 million jury verdict in favor of plaintiff class against an accounting firm and judgment entered for defendant); *In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512 (S.D.N.Y. 2011) (declining to enter judgment on jury verdict in favor of plaintiff class and modifying class definition after intervening change in Supreme Court precedent); *In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) (setting aside jury verdict in favor of plaintiffs and granting securities defendants' post-trial motion for judgment as a matter of law), *aff'd sub nom. Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012); *Erica P. John Fund, Inc. v. Halliburton Co.*, 2015 WL 10714013, at *3 (5th Cir. Nov. 4, 2015) (granting a "third interlocutory appeal in a [securities] case that has remained in the class certification stage for thirteen years," with two successive appeals to the U.S. Supreme Court).

omissions were material to investors, whether Lead Plaintiffs could establish the requisite fraudulent intent, and the extent to which the losses suffered by investors were the result of the disclosures regarding the impact of the increase in DIR fees, or instead, some other, non-fraudulent reason. Lead Counsel were fully informed of the strengths and weaknesses of Lead Plaintiffs' case, including the many complicated and nuanced legal and economic issues that would have to be resolved in the Lead Plaintiffs favor in order to achieve a successful result. In short, continued litigation would be hard fought, expensive, subject to significant expert testimony, and a positive result was far from assured. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 239 (3d Cir. 2001) ("[E]stablishing damages at trial would lead to a 'battle of experts' with each side presenting its figures to the jury and with no guarantee whom the jury would believe.").

Finally, there was the added risk of Diplomat's ability to fund a judgment at a later date. While Diplomat was a well-capitalized entity at the outset of the case, the Company's financial condition had deteriorated severely by the time the Settlement was reached. ¶60. Significantly, according to the Company's publicly filed financial reports, as of March 31, 2019, the Company reported less than $2.74 million in cash on its balance sheet, down from over $17 million Diplomat reported in the period immediately preceding the date the Litigation commenced. ¶61. When the Parties

- 14 -

agreed to settle on April 1, 2019, Diplomat stock closed at $5.70 per share, down from $14.16 per share at the time the lawsuit was filed, and down from the Class Period high of $37.12. *Id*. Thus, Defendants' wasting insurance coverage was likely the only source to fund a settlement. ¶62. Despite the risks, Lead Plaintiffs obtained a very favorable recovery. The Settlement represents approximately 5.5% to 7.3% percent of the estimated *maximum* damages suffered by Class Members. ¶58. This result exceeds the median percentage recovery in securities class actions according to data from NERA. *See* ¶58, Ex. 1 (excerpts from Stefan Boettrich and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2018 Full-Year Review* (NERA 29 Jan. 2019)) at 35, Fig. 27 (the median settlement recovery was 2.6% for cases alleging investor losses between $200-$399 million, and 3.1% for alleged losses between $100-$199 million) and at 36, Fig. 28 (the median ratio of settlements to investor losses between 2009 and 2018 ranged from 1.3% to 2.6%). Indeed, courts in this Circuit have routinely approved settlements with similar or smaller recoveries. *See, e.g.*, *GM*, 315 F.R.D. at 237 (compiling cases approving settlements representing as little as 3.8% of total damages). Accordingly, the proposed Settlement is a very good result for the Class and is certainly within the range of what would be determined to be fair, reasonable, and adequate.

### 4. The Stage of Proceedings and Amount of Discovery Engaged in By the Parties Supports Approval

"The relevant inquiry with respect to this factor is whether the plaintiff has obtained a sufficient understanding of the case to gauge the strengths and weaknesses of the claims and the adequacy of the settlement." *GM*, 315 F.R.D. at 236.  Here, Lead Counsel undoubtedly had a thorough understanding of the strengths and weaknesses of Lead Plaintiffs' claims.  During the course of the Litigation, Lead Counsel had, among other things:

- conducted an in-depth investigation, including a review and analysis of SEC filings, conference call transcripts, press releases, and financial analyst research reports concerning the Company;

- filed a detailed 78-page Amended Complaint based on the investigation;

- briefed, argued and successfully defended against Defendants' motion to dismiss and Defendants' motion for reconsideration;

- moved for class certification;

- prepared and served document requests to Defendants and subpoenas to third parties;

- reviewed and analyzed approximately 20,000 pages of documents provided by Defendants and key third parties;

- deposed Diplomat's Rule 30(b)(6) witness;

- met and conferred with Defendants and third parties regarding discovery;

- consulted with Lead Plaintiffs' market efficiency, accounting and damages experts; and

- engaged in settlement negotiations over the course of nearly a year.

¶¶22-52. There can be no question that by the time the Settlement was reached, Lead Plaintiffs and Lead Counsel "had sufficient information to evaluate the strengths and weaknesses of the case and the merits of the Settlement." *GM*, 315 F.R.D. at 237. Accordingly, this factor supports approval of the Settlement.

### 5. Lead Counsel and Lead Plaintiffs Endorse the Settlement

In assessing the fairness of a proposed settlement, courts consider Lead Counsel's endorsement of the Settlement, "which is entitled to significant deference." *GM*, 315 F.R.D. at 238; *accord IUE-CWA v. GMC*, 238 F.R.D. 583, 597 (E.D. Mich. 2006) ("The judgment of the parties' counsel that the settlement is in the best interest of the settling parties 'is entitled to significant weight, and supports the fairness of the class settlement.'"). This is especially true where, as here, the stage of the proceedings indicates that counsel and the court are fully capable of evaluating the merits of plaintiff's case and the probable course of future litigation. *See Armstrong v. Gallia Metro. Hous. Auth.*, 2001 WL 1842452, at *3-*4 (S.D. Ohio Apr. 20, 2001).

Here, as a result of the negotiation process, Lead Counsel have carefully considered and evaluated the relevant legal authorities and evidence gathered to support the claims asserted against Defendants; the likelihood of prevailing on these claims; and the risk, expense, and duration of continued litigation. Based on this

- 17 -

consideration, Lead Counsel have concluded that the Settlement is not only fair and reasonable but is a highly favorable result for the Class. ¶¶11,59. Likewise, Lead Plaintiffs approve the Settlement. *See* Zimmerman Decl., ¶9; Kitsonas Decl., ¶9; GERS Decl., ¶4. Accordingly, this factor also supports final approval.

### 6. The Reaction of the Class Supports Final Approval

To further support approval of a settlement, courts have also looked to the reaction of the class. *Brotherton v. Cleveland*, 141 F. Supp. 2d 894, 906 (S.D. Ohio 2001). "The lack of objections by class members in relation to the size of the class highlights the fairness of the settlements to unnamed class members and supports approval of the settlements." *In re Se. Milk Antitrust Litig.*, 2013 WL 2155379, at *6 (E.D. Tenn. May 17, 2013). Here, as detailed *infra*, Section VI, as of July 11, 2019, the Claims Administrator has disseminated over 25,000 Notices to potential Class Members. To date no Class Member has objected to any aspect of the Settlement. Thus, this factor favors approval of the Settlement.

### 7. Public Interest Favors Approval of the Settlement

The Supreme Court has repeatedly recognized "that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions," *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007), and "'there is a strong public interest in encouraging

- 18 -

settlement of complex litigation and class action suits because they are "notoriously difficult and unpredictable" and settlement conserves judicial resources.'"  *GM*, 315 F.R.D. at 241-42.   The Settlement also furthers public policy by providing a substantial recovery to the Class, and ends this protracted Litigation, thereby conserving judicial resources.  *See In re Broadwing, Inc.*, 252 F.R.D. 369, 376 (S.D. Ohio 2006) ("[T]here is certainly a public interest in settlement of disputed cases that require substantial federal judicial resources to supervise and resolve.").

### 8.    Other Rule 23(e)(2) Factors Support Final Approval

Rule 23(e)(2), as amended, also considers: (i) the effectiveness of the proposed method of distributing relief to the class, including the method of processing class-members claims; (ii) the terms of any proposed award of attorneys' fees, including timing of payment; (iii) any agreement made in connection with the proposed settlement; and (iv) the equitable treatment of class members.   *See* Rule 23(e)(2)(C)(ii), (iii), and (iv); Rule 23(e)(2)(D).   Each of these additional considerations also supports final approval of the Settlement.

*First*, the method for processing Class Members' claims and distributing relief to eligible claimants are well-established, effective procedures for processing claims submitted by potential Class Members and efficiently distributing the Net Settlement Fund.  Here, the Court-appointed Claims Administrator will review and process the

- 19 -

claims under the guidance of Lead Counsel, allow claimants an opportunity to cure any deficiencies in their claims or request the Court to review a denial of their claims, and, lastly, mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the proposed Plan of Allocation), *see infra* Section IV. *See, e.g.*, *GM*, 315 F.R.D. at 233-34, 245 (approving settlement with a nearly identical distribution process).

**Second**, as discussed in the accompanying fee and expense memorandum, Lead Counsel are applying for an award of 30% of the common fund fee award as compensation for the services they rendered on behalf of the Class, as well as payment of litigation costs and expenses. The proposed attorneys' fees are reasonable in light of the work performed and the results obtained, and a 30% award is consistent with attorneys' fee percentages that courts (including this Court) have approved in similar cases. *See, e.g.*, *In re ProQuest Co. Sec. Litig.*, 2009 WL 10702449, at *4 (E.D. Mich. Mar. 30, 2009) (Cohn, J.) (awarding 30% of $20 million settlement in securities class action observing that the "amount of attorneys' fees awarded . . . are fair and reasonable and consistent with awards in similar cases"). Notably, approval of the requested fees is separate from consideration of approval of the Settlement, and the Settlement may not be terminated based on any ruling on attorneys' fees. *See* Stipulation, ¶7.3.

- 20 -

***Third***, the Parties entered into a confidential agreement establishing conditions under which Defendants may terminate the Settlement if a certain threshold of Class Members exclude themselves.  Stipulation, ¶8.3.  This type of agreement is a standard provision in securities class action settlements and has no negative impact on the fairness of the Settlement.  *See Erica P. John Fund, Inc. v. Halliburton Co.*, 2018 WL 1942227, at *5 (N.D. Tex. Apr. 25, 2018) (approving settlement with similar confidential agreement).

***Fourth***, under the proposed Plan of Allocation, each Authorized Claimant will receive his, her, or its *pro rata* share of the Net Settlement Fund based on their Recognized Claim as calculated by the Plan of Allocation.

Accordingly, each relevant factor supports final approval of the Settlement

## IV.    THE PLAN OF ALLOCATION IS FAIR AND REASONABLE

Approval of the Plan of Allocation requires that it is fair, reasonable, and adequate.  *See, e.g.*, *Packaged Ice*, 2011 WL 6209188, at *15.  "'Courts generally consider plans of allocation that reimburse class members based on the type and extent of their injuries to be reasonable.'"  *Id.*

Here, the proposed Plan of Allocation, which was developed in consultation with Lead Plaintiffs' damages expert, is fair, reasonable and adequate.  The Plan of Allocation provides for the distribution of the Net Settlement Fund among Authorized

- 21 -

Claimants on a *pro rata* basis based on their recognized loss.  ¶¶68-72.  The Plan of

Allocation ensures that the Net Settlement Fund will be fairly and equitably

distributed to those who have losses consistent with the statutory damage framework

of the Exchange Act.  Moreover, the Plan of Allocation was disclosed in the Notice

mailed to potential Class Members and nominees and, to date, there have been no

objections to the Plan of Allocation.  ¶73.  Thus, the Plan of Allocation is fair and

reasonable.

## V.      THE COURT SHOULD FINALLY CERTIFY THE CLASS

In presenting the Settlement for preliminary approval, Lead Plaintiffs requested

that the Court certify the Class for settlement purposes so that notice of the

Settlement, the Final Approval Hearing, and the rights of Class Members to object to

the Settlement, request exclusion from the Class or submit Proof of Claim and Release

forms could be issued.  In the Preliminary Approval Order, the Court found that the

proposed class met the requirements of Rules 23(a) and 23(b)(3) for settlement

purposes.

Since entry of the Preliminary Approval Order, nothing has changed to alter the

propriety of the Court's preliminary certification of the Class.  Accordingly, and for

all the reasons stated in Lead Plaintiffs' Preliminary Approval Memorandum (*see* ECF

No. 58 at 16-23) incorporated herein by reference, the Court should certify the Class.

- 22 -

## VI.    THE NOTICE OF SETTLEMENT SATISFIES RULE 23 AND
##         DUE PROCESS REQUIREMENTS

Rule 23(e)(1) requires that notice of the proposed settlement be given "in a reasonable manner to all class members who would be bound by the proposal."  Rule 23(c)(2)(B) further requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."   In addition to the requirements of Rule 23, the Constitution's Due Process Clause also guarantees unnamed class members the right to notice of certification or settlement.  In securities class actions, the notice must contain the information outlined in Rule 23(c)(2)(B) and the PSLRA.  *See* 15 U.S.C. §78u-4(a)(7).  A notice of settlement satisfies due process when it is "'reasonably calculated to reach interested parties.'"  *Fidel v. Farley*, 534 F.3d 508, 514 (6th Cir. 2008)  The notice program utilized here, as set forth in the Preliminary Approval Order, easily meets these requirements.

In accordance with the Preliminary Approval Order, the Claims Administrator has disseminated over 25,000 copies of the Notice and Proof of Claim and Release via first-class mail to potential members of the Class and nominees.  *See* Declaration of Carole K. Sylvester Regarding Notice Dissemination, Publication, and Requests for Exclusion Received to Date ("Sylvester Decl."), ¶11, submitted herewith.  The Claims

- 23 -

Administrator also caused the Summary Notice to be published in *The Wall Street Journal* and transmitted over the *Business Wire*. *Id.*, ¶12. In addition, a dedicated toll-free telephone number and website were established to assist potential Class Members with inquiries regarding the Litigation, the Settlement, and the claims process. *Id.*, ¶¶13-14.

The Notice provides Class Members, among other things, (i) an explanation of the nature of the Litigation and the claims asserted; (ii) the definition of the Class; (iii) the basic terms of the Settlement, including the amount and releases; (iv) the Plan of Allocation and estimated average recovery per affected Diplomat share; (v) dates and deadlines for certain Settlement-related events; (vi) the reasons the parties are proposing the Settlement; (vii) the maximum amount of attorneys' fees and expenses that will be sought; (viii) a description of Class Members' right to request exclusion or to object to the Settlement, the Plan of Allocation, and/or the maximum attorneys' fees or expenses; (ix) notice of the binding effect of a judgment on Class Members; and (x) a way of obtaining additional information about the Litigation, by contacting Lead Counsel or the Claims Administrator, or visiting the Settlement website. *See* Fed. R. Civ. P. 23(c)(2)(B); 15 U.S.C. §78u-4(a)(7). The Notice also provides recipients with information on how to submit a Proof of Claim and Release. *See* Sylvester Decl., Ex. A.

- 24 -

4813-7513-1548.v1

Lead Plaintiffs and their counsel have satisfied all of the elements of the notice plan approved by the Court.  *See generally* Sylvester Decl.  Accordingly, the notice program implemented in this Litigation constitutes "the best notice . . . practicable under the circumstances" and satisfies the requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, and the PSLRA.  *See* Fed. R. Civ. P. 23(c)(2)(B); *see also GM*, 315 F.R.D. at 242 (finding similar notice program "satisfied Rule 23's notice requirement").

## VII.   CONCLUSION

For the foregoing reasons, Lead Plaintiffs respectfully request that the Court: (i) approve the Settlement as fair, reasonable, and adequate; (ii) approve the Plan of Allocation as fair and reasonable; and (iii) finally certify the Class for settlement purposes pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3).

DATED:  July 16, 2019                    Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
ELLEN GUSIKOFF STEWART
JONAH H. GOLDSTEIN
MATTHEW I. ALPERT
HILLARY B. STAKEM
ALEXI H. PFEFFER-GILLETT


                              s/Matthew I. Alpert
                              MATTHEW I. ALPERT

- 25 -

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

GLANCY PRONGAY & MURRAY LLP
LIONEL Z. GLANCY
JOSHUA L. CROWELL
1925 Century Park East, Suite 2100
Los Angeles, CA  90067
Telephone:  310/201-9150
310/201-9160 (fax)

Counsel for Lead Plaintiffs and the Class

VANOVERBEKE MICHAUD &
    TIMMONY, P.C.
MICHAEL J. VANOVERBEKE (P42641)
THOMAS C. MICHAUD (P46787)
79 Alfred Street
Detroit, MI  48201
Telephone:  313/578-1200
313/578-1201 (fax)
mvanoverbeke@vmtlaw.com
tmichaud@vmtlaw.com

THE MILLER LAW FIRM, P.C.
E. POWELL MILLER (P39487)
SHARON S. ALMONRODE (P33938)
950 W. University Dr., Suite 300
Rochester, MI  48307
Telephone:  248/841-2200
248/652-2852 (fax)
mln@millerlawpc.com
ssa@millerlawpc.com

Liaison Counsel for the Class

- 26 -

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on July 16, 2019, I authorized the electronic

filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send

notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and

I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to

the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ MATTHEW I. ALPERT
MATTHEW I. ALPERT

ROBBINS GELLER RUDMAN
& DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA 92101-8498
Telephone: 619/231-1058
619/231-7423 (fax)

E-mail: MAlpert@rgrdlaw.com

## Mailing Information for a Case 2:16-cv-14005-AC-SDD Zimmerman v. Diplomat Pharmacy, Inc. et al

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Sharon S. Almonrode**
  ssa@millerlawpc.com,djv@ecf.courtdrive.com,djv@millerlawpc.com,ssa@ecf.courtdrive.com,sab@miller.law,sab@ecf.courtdrive.com

- **Matthew I. Alpert**
  malpert@rgrdlaw.com,kathyj@rgrdlaw.com,HStakem@rgrdlaw.com,e_file_sd@rgrdlaw.com,kwoods@rgrdlaw.com,2127683420@filings.docketbird.com

- **Joshua L. Crowell**
  JCrowell@glancylaw.com,joshua-crowell-3496@ecf.pacerpro.com,info@glancylaw.com,VMesropyan@glancylaw.com

- **James W. Ducayet**
  jducayet@sidley.com,james-ducayet-9115@ecf.pacerpro.com,zalam@sidley.com,efilingnotice@sidley.com

- **Jonah H. Goldstein**
  jonahg@rgrdlaw.com

- **Nicholas B Gorga**
  ngorga@honigman.com,litdocket@honigman.com,cwalmsley@honigman.com

- **Ellen Anne Gusikoff Stewart**
  elleng@rgrdlaw.com

- **Thomas C. Michaud**
  tmichaud@vmtlaw.com

- **E. Powell Miller**
  epm@millerlawpc.com,aad@miller.law,aad@ecf.courtdrive.com,sab@miller.law,sab@ecf.courtdrive.com

- **Andrew M. Pauwels**
  apauwels@honigman.com,litdocket@honigman.com,ahatcher@honigman.com

- **Alexi Harry Pfeffer-Gillett**
  agillett@rgrdlaw.com

- **Nilofer I. Umar**
  numar@sidley.com,efilingnotice@sidley.com,nilofer-umar-6698@ecf.pacerpro.com,dgeiger@sidley.com

### Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)