UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

| | | |
|---|---|---|
| DAVID N. ZIMMERMAN, Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) | Civ. No. 2:16-cv-14005-AC-SDD |
| | ) | Hon. Avern Cohn |
| Plaintiff, | ) ) | CLASS ACTION |
| vs. | ) ) | LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' |
| DIPLOMAT PHARMACY, INC., et al., | ) ) | FEES, LITIGATION COSTS AND EXPENSES AND AWARDS TO |
| Defendants. | ) ) | LEAD PLAINTIFFS PURSUANT TO 15 U.S.C. §78u-4(a)(4) |
| | ) | |

Lead Counsel, Robbins Geller Rudman & Dowd LLP and Glancy Prongay & Murray LLP (collectively, "Lead Counsel"), respectfully move this Court for entry of an order: (a) awarding attorneys' fees; (b) paying litigation costs and expenses incurred by Plaintiffs' Counsel; and (c) awarding Lead Plaintiffs compensation for the time and expenses they incurred in representing the Class in this Litigation.

In support of their motion, Lead Counsel rely on the accompanying Memorandum of Law; the Joint Declaration of Matthew I. Alpert and Joshua L. Crowell; the Declaration of Carole K. Sylvester; the Declarations of Lead Plaintiffs; and the Declarations of Plaintiffs' Counsel.

A proposed order will be submitted with Lead Counsel's reply submission on or before August 13, 2019.

DATED:  July 16, 2019        ROBBINS GELLER RUDMAN
         & DOWD LLP
        ELLEN GUSIKOFF STEWART
        JONAH H. GOLDSTEIN
        MATTHEW I. ALPERT
        HILLARY B. STAKEM
        ALEXI H. PFEFFER-GILLETT

               s/Matthew I. Alpert
             MATTHEW I. ALPERT

- 1 -

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

GLANCY PRONGAY & MURRAY LLP
LIONEL Z. GLANCY
JOSHUA L. CROWELL
1925 Century Park East, Suite 2100
Los Angeles, CA  90067
Telephone:  310/201-9150
310/201-9160 (fax)

Counsel for Lead Plaintiffs and the Class

VANOVERBEKE MICHAUD &
   TIMMONY, P.C.
MICHAEL J. VANOVERBEKE (P42641)
THOMAS C. MICHAUD (P46787)
79 Alfred Street
Detroit, MI  48201
Telephone:  313/578-1200
313/578-1201 (fax)
mvanoverbeke@vmtlaw.com
tmichaud@vmtlaw.com

THE MILLER LAW FIRM, P.C.
E. POWELL MILLER (P39487)
SHARON S. ALMONRODE (P33938)
950 W. University Dr., Suite 300
Rochester, MI  48307
Telephone:  248/841-2200
248/652-2852 (fax)
mln@millerlawpc.com
ssa@millerlawpc.com

Liaison Counsel for the Class

- 2 -

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF MICHIGAN

# SOUTHERN DIVISION

| | | |
|---|---|---|
| DAVID N. ZIMMERMAN, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | Civ. No. 2:16-cv-14005-AC-SDD |
| | ) | **CLASS ACTION** |
| Plaintiff, | ) ) | Hon. District Judge Avern Cohn |
| vs. | ) ) ) | Hon. Magistrate Judge Stephanie Dawkins Davis |
| DIPLOMAT PHARMACY, INC., et al., | ) ) | **MEMORANDUM OF LAW IN SUPPORT OF LEAD COUNSEL'S** |
| Defendants. | ) ) | **MOTION FOR AN AWARD OF ATTORNEYS' FEES,** |
| | ) ) | **LITIGATION COSTS AND EXPENSES AND AWARDS TO** |
| | ) ) | **LEAD PLAINTIFFS PURSUANT** |
| | ) | **TO 15 U.S.C. 78U-4(A)(4)** |

## **TABLE OF CONTENTS**

I.    PRELIMINARY STATEMENT ..................................................1

II.   FACTUAL AND PROCEDURAL HISTORY ...............................3

III.  ARGUMENT.............................................................................3

     A.    Lead Counsel Are Entitled To A Reasonable Award Of
            Attorneys' Fees From The Common Fund ...........................3

     B.    The Court Should Award A Reasonable Percentage Of
            The Common Fund...................................................................4

     C.    The Requested Attorneys' Fees Are Reasonable Under
            The Percentage Of The Fund Method ....................................6

     D.    The Requested 30% Fee Is Fair And Reasonable ................9

            1.    The Value Of The Benefit Rendered To The Class
                   Supports The Requested Fee.......................................10

            2.    Society's Stake In Rewarding Attorneys Who
                   Enforce The Securities Laws Supports The
                   Requested Fee .............................................................13

            3.    The Contingent Nature Of The Representation
                   Supports The Requested Fee.......................................15

            4.    The Diligent Prosecution Of The Litigation
                   Supports The Requested Fee.......................................16

             5.    Complexity Of The Litigation Supports The
                   Requested Fee .............................................................17

             6.    The Professional Skill And Standing Of Counsel
                   Supports The Requested Fee.......................................19

             7.    Class Members' Reaction Supports Final Approval ...............21

     E.    Plaintiffs' Counsel's Costs and Expenses Are Reasonable
            And Were Necessarily Incurred To Achieve The Benefit
            Obtained ..................................................................................22

     F.    The Requested Awards To Lead Plaintiffs Are
            Reasonable..............................................................................24

IV.  CONCLUSION ..........................................................................25

## <u>TABLE OF AUTHORITIES</u>

## <u>CASES</u>

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
    572 F.3d 221 (5th Cir. 2009) ................................................................19

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988) .........................................................................13

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
    472 U.S. 299 (1985) .........................................................................13

*Boeing Co. v. Van Germert*,
    444 U.S. 472 (1980) ...........................................................................3

*City of Providence v. Aeropostale, Inc.*,
    2014 WL 1883494 (S.D.N.Y. May 9, 2014).....................................19

*Denney v. Phillips & Buttorf Corp.*,
    331 F. 2d 249 (6th Cir. 1964) ..............................................................9

*Fogarazzo v. Lehman Bros., Inc.*,
    2011 WL 671745 (S.D.N.Y. Feb. 23, 2011) ......................................17

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983) .........................................................................10

*High-Crush Partners L.P. Sec. Litig.*,
    2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014).....................................6

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
    2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ........................................19

*In re Caraco Pharm. Labs., Ltd. Sec. Litig.*,
    2013 WL 3213328 (E.D. Mich. June 26, 2013).............................7, 25

*In re Cardinal Health Inc. Sec. Litig.*,
    528 F. Supp. 2d 752 (S.D. Ohio 2007)............................... 5, 14, 15, 25

*In re Cardizem CD Antitrust Litig.*,
    218 F.R.D. 508 (E.D. Mich. 2003) ............................................................ *passim*

*In re Delphi Corp. Sec., Derivative & ERISA Litig.*,
    248 F.R.D. 483 (E.D. Mich. 2008) ............................................................ *passim*

*In re Global Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) .......................................................................23

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
    246 F.R.D. 156 (S.D.N.Y. 2007) .......................................................................17

*In re Nationwide Fin. Servs. Litig.*,
    2009 WL 8747486 (S.D. Ohio Aug. 19, 2009) ..................................................21

*In re Packaged Ice Antitrust Litig.*,
    2011 WL 6209188 (E.D. Mich. Dec. 13, 2011) ..................................................5

*In re Polyurethane Foam Antitrust Litig.*,
    2015 WL 1639269 (N.D. Ohio Feb. 26, 2015) ....................................................8

*In re Prandin Direct Purchaser Antitrust Litig.*,
    2015 WL 1396473 (E.D. Mich. Jan. 20, 2015) ................................................ 6-7

*In re ProQuest Company Sec. Litig.*,
    2009 WL 10702449 (E.D. Mich. Mar. 30, 2009) ................................................6

*In re Provectus Biopharmaceuticals, Inc. Sec. Litig.*,
    2016 WL 7735229 (E.D. Tenn. Dec. 12, 2016) ................................................25

*In re Se. Milk Antitrust Litig.*,
    2013 WL 2155387 (E.D. Tenn. May 17, 2013) ......................................... *passim*

*In re Skelaxin (Metaxalone) Antitrust Litig.*,
    MDL No. 2343, 2014 WL 2946459 (E.D. Tenn. Jun. 30, 2014) ..........................5

*In re Telectronics Pacing Sys.*,
    186 F.R.D. 459 (S.D. Ohio 1999) .......................................................................5

*Jergess v. Transnation Title Insurance Company*,
  2006 WL 8431491 (E.D. Mich. May 18, 2006) ...................................................7

*Maher v. Zapata Corp.,*
  714 F.2d 436 (5th Cir. 1983) ...............................................................................17

*Moulton v. United States Steel Corp.*,
  581 F. 3d 344 (6th Cir. 2009) ................................................................................9

*N.Y. State Teachers' Ret. Sys. v. Gen. Motors Co.*,
  315 F.R.D. 226 (E.D. Mich. 2016) .................................................................3, 11

*New England Health Care Emps. Pension Fund v. Fruit of the Loom, Inc.*,
  234 F.R.D. 627 (W.D. Ky. 2006) ................................................................. *passim*

*Palazzolo v. Fiat Chrysler Automobiles N.V.*,
  2019 WL 2957143 (E.D. Mich. June 5, 2019) .....................................................7

*Pergament v. Kaiser-Frazer Corp.*,
  224 F.2d 80 (6th Cir. 1955) .......................................................................... 10, 16

*Ramey v. Cincinnati Enquirer, Inc.*,
  508 F.2d 1188 (6th Cir. 1974) ...............................................................................9

*Rankin v. Rots*,
  2006 WL 1791377 (E.D. Mich. June 27, 2006) ...............................................4, 14

*Rawlings v. Prudential-Bache Props., Inc.*,
  9 F.3d 513 (6th Cir. 1993) ........................................................................... *passim*

*Smillie v. Park Chem. Co.*,
  710 F. 2d 271 (6th Cir. 1983) ................................................................................9

*Stanley v. U.S. Steel Co.*,
  2009 WL 4646647 (E.D. Mich. Dec. 8, 2009) .................................................7, 15

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ............................................................................................13

*The Bd. of Trs. of the City of Birmingham Emps.' Ret. Sys. v. Comerica Bank*,
　2013 WL 12239522 (E.D. Mich. Dec. 27, 2013) ..................................................7

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
　669 F.3d 632 (5th Cir. 2012) ................................................................................6

*Wal–Mart Stores, Inc. v. Visa U.S.A., Inc.,*
　396 F.3d 96 (2d Cir. 2005) ...................................................................................5

## **STATUTES**

15 U.S.C. § 78 ................................................................................... *passim*

## <u>STATEMENT OF ISSUES PRESENTED</u>

1.      Whether the Court should approve Lead Counsel's request for an award of attorneys' fees in the amount of 30% of the $14.1 million Settlement, plus interest thereon.

2.      Whether the Court should approve Lead Counsel's request for litigation costs and expenses in the amount of $225,717.22.

3.      Whether the Court should approve Lead Plaintiffs' requests for an aggregate of $13,657.51  in connection with  their representation of the Class.

vi

## **CONTROLLING OR MOST APPROPRIATE AUTHORITIES**

### **CASES**

*Pergament v. Kaiser-Frazer Corp.*, 224 F.2d 80, 83 (6th Cir. 1955)

*Denney v. Phillips & Buttorf Corp.*, 331 F. 2d 249, 251 (6th Cir. 1964)

*Smillie v. Park Chem. Co.*, 710 F. 2d 271, 275 (6th Cir. 1983)

### **STATUTES**

15 U.S.C. § 78u-4(a)(4)

### **RULES**

Federal Rule of Civil Procedure 23(h)

Court-appointed Lead Counsel Robbins Geller Rudman & Dowd LLP ("Robbins Geller") and Glancy Prongay & Murray LLP ("GPM") (collectively, "Lead Counsel") respectfully request that the Court grant their motion for an award of attorneys' fees in the amount of 30% of the Settlement Fund, plus interest earned thereon.[1]  Lead Counsel also seek an award of: (i) $225,717.22 in litigation costs and expenses that Plaintiffs' Counsel reasonably and necessarily incurred in prosecuting and resolving the action, and (ii) $13,657.51 to Lead Plaintiffs in connection with their representation of the Class, as authorized by the Private Securities Litigation Reform Act of 1995 (the "PSLRA").

## I.    PRELIMINARY STATEMENT

The proposed settlement, which provides for a payment of $14.1 million in cash in exchange for the resolution of the Litigation (the "Settlement"), represents an extremely favorable result for the Class, particularly when juxtaposed against the significant procedural and substantive hurdles that Lead Plaintiffs would have

_____

[1] Unless otherwise noted, capitalized terms have the meanings ascribed to them in the Stipulation of Settlement dated April 22, 2019 (the "Stipulation") (ECF No. 60) or in the accompanying Joint Declaration of Matthew I. Alpert and Joshua L. Crowell in Support of: (A) Lead Plaintiffs' Motion for Final Approval of Settlement and Approval of Plan of Allocation; and (B) Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses and Award to Lead Plaintiffs Pursuant to 15 U.S.C. 78u-4(a)(4) (the "Joint Declaration" or "Joint Decl."). All citations to "¶__" in this memorandum refer to paragraphs in the Joint Declaration.  Unless otherwise noted, all internal citations and quotations have been omitted and emphasis has been added.

1

had to overcome to prevail in this complex securities fraud litigation.   In undertaking this litigation, brought under the Securities Exchange Act of 1934, as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), Lead Counsel faced numerous challenges to establishing liability, loss causation, and damages and were opposed by highly-skilled defense counsel.  There was, therefore, a strong possibility that the case would yield little or no recovery after many more years of costly litigation.  Moreover, Diplomat's deteriorating financial condition and wasting directors' and officers' insurance heightened the risk that Lead Counsel's work on behalf of the Class would go wholly or partially uncompensated, regardless of their success.  Despite these risks, Lead Counsel dedicated thousands of hours to this litigation over the course of two and a half years.   This work was performed on a fully-contingent basis, and the only guarantees were that the case would be complex, costly, and hard-fought, and that Lead Counsel would receive nothing if they lost.

Lead Counsel believe that a 30% fee award properly reflects the many significant risks undertaken by Lead Counsel, as well as the excellent result achieved in a hotly-contested and difficult litigation.   The requested fee is reasonable under the circumstances here and well within the range of attorneys' fees awarded in similar complex, contingency cases.  In addition, the costs and expenses requested by Lead Counsel and Lead Plaintiffs are likewise reasonable in

amount, and they were necessarily incurred in the successful prosecution of the action.  Accordingly, they too should be approved.

## II.   FACTUAL AND PROCEDURAL HISTORY

The Joint Declaration is an integral part of this submission, and for the sake of brevity in this memorandum, the Court is respectfully referred to the Joint Declaration for a detailed description of, *inter alia*: the history of the Litigation (¶¶22-49); the efforts involved in the drafting and defending of the complaints (¶¶24-29); the nature of the claims asserted (¶¶19-22); the negotiations leading to the Settlement (¶¶50-52); the risks and uncertainties of continued litigation (¶¶59, 58, 60-62); and a description of the services Lead Counsel provided for the benefit of the Class (¶¶22-52).

## III.   ARGUMENT

### A.   <u>Lead Counsel Are Entitled To A Reasonable Award Of Attorneys' Fees From The Common Fund</u>

It has long been recognized that "a lawyer who recovers a common fund . . . is entitled to a reasonable attorney's fee from the fund as a whole."  *N.Y. State Teachers' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 226, 243 (E.D. Mich. 2016) (quoting *Boeing Co. v. Van Germert*, 444 U.S. 472, 478 (1980)).  In common fund cases, the Sixth Circuit has held that "a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved." *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993).  The

standard for an award of attorneys' fees in common fund cases in the Sixth Circuit

is that they be "reasonable under the circumstances."  *Id.; see also In re Delphi*

*Corp. Sec., Derivative & ERISA Litig.*, 248 F.R.D. 483, 502 (E.D. Mich. 2008).

> **B.**     **The Court Should Award A Reasonable Percentage Of The Common Fund**

The diligent efforts of Lead Counsel have resulted in a $14.1 million

settlement.  Courts generally favor awarding fees from a common fund based upon

the percentage-of-the-fund method.  *See Rawlings*, 9 F.3d at 516 (recognizing "the

recent trend towards adoption of the percentage of the fund method"; *In re Se. Milk*

*Antitrust Litig.*, 2013 WL 2155387, at *2 (E.D. Tenn. May 17, 2013); *accord*

*Rankin v. Rots*, 2006 WL 1791377, at *2 (E.D. Mich. June 27, 2006) (Cohn, J.)

("Where counsel's efforts create a substantial common fund for the benefit of the

Class, they are entitled to payment from the fund based on a percentage of that

fund.")

Similarly, courts in this District have noted a "preference for the percentage-

of-the-fund method in common fund cases."  *In re Cardizem CD Antitrust Litig.*,

218 F.R.D. 508, 532 (E.D. Mich. 2003).  The percentage method is preferred in

common fund cases because it eliminates disputes about the reasonableness of

rates and hours, conserves judicial resources, and aligns the interests of class

counsel and class members.  *See, e.g., Rawlings*, 9 F.3d at 515.  It also "more

accurately reflects the result achieved" and "has the virtue of reducing the

incentive for Plaintiff's attorneys to over-litigate or 'churn' cases." *In re Skelaxin (Metaxalone) Antitrust Litig*., MDL No. 2343, 2014 WL 2946459, *1 (E.D. Tenn. Jun. 30, 2014).  In other words, the percentage-of-the-fund method "'provides a powerful incentive for the efficient prosecution and early resolution of litigation.'" *See Se. Milk*, 2013 WL 2155387, at *2 (quoting *Wal–Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 121 (2d Cir. 2005)).[2] Conversely, the lodestar method "has been criticized for being too time-consuming of scarce judicial resources." *Rawlings*, 9 F.3d at 516-17.

Based on these considerations and others, district courts in this Circuit have almost uniformly shifted to the percentage method in awarding fees in common fund cases.  *See Skelaxin*, 2014 WL 2946459, at *1 ("The Court recognizes that the trend in 'common fund cases has been toward use of the percentage method.'"); *Cardizem*, 218 F.R.D. at 532; *Delphi*, 248 F.R.D. at 502 (E.D. Mich. 2008); *In re Packaged Ice Antitrust Litig.*, 2011 WL 6209188, at *17 (E.D. Mich. Dec. 13, 2011).

---

[2] *See, e.g. In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 762 (S.D. Ohio 2007) ("As a threshold matter, the Court notes that the percentage approach is the current prevailing method in securities class actions."); *In re Telectronics Pacing Sys.*, 186 F.R.D. 459, 483 (S.D. Ohio 1999) ("the preferred method in common fund cases has been to award a reasonable percentage of the fund to Class Counsel as attorneys' fees"), *rev'd on other grounds*, 221 F.3d 870 (6th Cir. 2000).

Finally, application of the percentage-of-the-fund method is consistent with the PSLRA, which provides that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a ***reasonable percentage*** of the amount" recovered for the class.  15 U.S.C. § 78u-1(a)(6).  In fact, several courts have concluded that Congress, in using this language, expressed a preference for the percentage method when determining attorneys' fees in securities class actions.  *See Delphi*, 248 F.R.D. at 502; *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 643 (5th Cir. 2012); *In re High-Crush Partners L.P. Sec. Litig.*, 2014 WL 7323417, at *12 (S.D.N.Y. Dec. 19, 2014).

### C.     The Requested Attorneys' Fees Are Reasonable Under The Percentage-Of-The-Fund Method

Lead Counsel's fee request of 30% of the Settlement Fund falls well within the range of fees awarded in the Sixth Circuit on a percentage basis in complex common fund cases, which can be as high as 50%.  *See Se. Milk*, 2013 WL 2155387, at *3 ("[33%] is certainly within the range of fees often awarded in common fund cases, both nationwide and in the Sixth Circuit.").

Indeed, this Court has routinely awarded attorneys' fees of 30% or higher in similar class actions.  *See e.g.*, *In re ProQuest Company Sec. Litig.* 2009 WL 10702449, at *4 (E.D. Mich. Mar. 30, 2009) (Cohn, J.) (awarding 30% of $20 million settlement in securities class action, observing that fees were a "fair and reasonable and consistent with similar cases"); *In re Prandin Direct Purchaser*

6

*Antitrust Litig.*, 2015 WL 1396473, at *4 (E.D. Mich. Jan. 20, 2015) (Cohn, J.) (awarding approximately one-third of $19 million settlement in antitrust class action, observing that award is "within the range of fees ordinarily awarded" and "within the range of fee awards in settlements of this type.").[3]

The *ProQuest* and *Prandin* decisions are in line with other Eastern District of Michigan cases recognizing that attorney fee awards of 30% or higher are typical.  *See e.g.*, *Palazzolo v.  Fiat Chrysler Automobiles N.V.*, 2019 WL 2957143, at *1 (E.D. Mich. June 5, 2019) (awarding 30% of $14,750,000 settlement in securities class action, finding award "to be fair and reasonable and consistent with awards in similar cases."); *In re Caraco Pharm. Labs., Ltd. Sec. Litig.*, 2013 WL 3213328, at *4 (E.D. Mich. June 26, 2013) (awarding 33%); *The Bd. of Trs. of the City of Birmingham Emps.' Ret. Sys. v. Comerica Bank*, 2013 WL 12239522, at *6 (E.D. Mich. Dec. 27, 2013) (awarding 30%); *In re Lason, Inc. Sec. Litig.*, No. 2:99-cv-76079-AJT (E.D. Mich. Mar. 31, 2003), ECF No. 93, ¶12 (awarding 30%) (attached hereto as Ex. 1).

---

[3] *See also Stanley v. U.S. Steel Co.*, 2009 WL 4646647 (E.D. Mich. Dec. 8, 2009) (Cohn, J.) (reaffirming award of 30% of $4,450,000 settlement in an environmental air pollution class action noting, noting that award was "fair and reasonable"); *Jergess v. Transnation Title Insurance Company*, 2006 WL 8431491, at *4 (E.D. Mich. May 18, 2006) (Cohn, J.) (awarding attorneys' fees of 30% of $27,550,000 settlement fund in class action under Real Estate Settlement Procedures Act).

The Eastern District of Michigan attorney fee awards are likewise consistent with other Sixth Circuit awards, which routinely award attorney's fees of 30% or higher.  *See Indiana State District Council of Laborers and HOD Carriers Pension and Welfare Fund v. Omnicare, Inc.*, No. 2:06-cv-00026-WOB-CJS, ECF No. 332, ¶3 (E.D. Ky. June 27, 2019) (awarded one-third of $20 million settlement, plus expenses) (attached hereto as Ex. 2); *Burges v. Bancorp South, Inc.*, No. 3:14-cv-01564, ECF No. 265, ¶3 (M.D. Tenn. Sept. 21, 2018) (awarded one-third of a $13 million recovery) (attached hereto as Ex. 3); *Se. Milk*, 2013 WL 2155387, at *1, 3, 8 (awarding fee of one-third of $158.6 million settlement, noting "although the total fee requested is a very large amount . . . the percentage requested is certainly within the range of fees often awarded in common fund cases, both nationwide and in the Sixth Circuit."); *see also* Alba Conte & Herbert Newberg, *Newberg on Class Actions* (4th ed. 2002) ("Empirical studies show that . . . fee awards in class actions average around one-third of the recovery.").[4]

Accordingly, Lead Counsel's requested fee of 30% of the Settlement is fair and reasonable and thus warrants approval.

---

[4] *See also In re Polyurethane Foam Antitrust Litig.*, 2015 WL 1639269, at *7 (N.D. Ohio Feb. 26, 2015) (30% of $147.8 million); *In re Foundry Resins Antit. Litig.,* No. 2:04-MDL-1638 (S.D. Ohio March 31, 2008), ECF No. 247, ¶1 (one-third of $14.1 million) (attached hereto as Ex. 4).

### D.     The Requested 30% Fee Is Fair And Reasonable

The touchstone of an appropriate fee award in common fund cases is whether the award is reasonable under the circumstances.  *See*, *Rawlings*, 9 F. 3d at 517.  The Sixth Circuit grants a district court "'considerable latitude of discretion on the subject, since it has far better means of knowing what is just and reasonable than an appellate court.'"  *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974)).

In determining the reasonableness of attorneys' fees, the Sixth Circuit over the years has identified several relevant factors that district courts "[o]ften, but by no means invariably, consider."  *Moulton v. United States Steel Corp.*, 581 F. 3d 344, 352 (6th Cir. 2009).   These have included "the complexity of the legal questions involved, the results accomplished, the professional standing of [counsel], and the professional standing of [defendants'] lawyers," the effort expended, and the public policy aspect of the case.  *Denney v. Phillips & Buttorf Corp.*, 331 F. 2d 249, 251 (6th Cir. 1964); *see also Smillie v. Park Chem. Co.*, 710 F. 2d 271, 275 (6th Cir. 1983).  Also included are "the extent and nature of the services; the labor, time and trouble involved; the results achieved; the character and importance of the matter in hand; the value of the property or the amount of money involved; the learning, skill and experience exercised; whether the fee is

9

absolute or contingent; and the ability to pay." *Pergament v. Kaiser-Frazer Corp.*,

224 F.2d 80, 83 (6th Cir. 1955).

As demonstrated below, application of the relevant  factors strongly support

an award of the requested attorneys' fee.

### 1.    The Value Of The Benefit Rendered To The Class Supports The Requested Fee

Lead  Counsel  secured  a  $14.1 million  settlement,  which  is  an  excellent

result  both  substantively  and  procedurally  given  the  risks  of  continued  litigation.

Courts  have  consistently  recognized  that  in  making  a  fee  award  the  "most  critical

factor  is  the  degree  of  success  obtained."  *Hensley v. Eckerhart*, 461 U.S. 424, 436

(1983).    *See also Rawlings*,  9 F. 3d  at  516  (a  percentage  of  the  fund  "will

compensate  counsel  for  the  result  achieved");  *In re Delphi Corp. Sec. Litig.*, 248

F.R.D. 483, 503 (E.D. Mich. 2008).

Most significantly, the Settlement exceeds the average recovery in securities

class actions of this size.  If Lead Plaintiffs prevailed on liability and ***all*** of their

loss  causation  and  damages  theories,  the  maximum  damages  suffered  by  the  Class

is approximately $255.2 million.  ¶58.  This amount includes the damages resulting

from stock losses on two trading days following alleged corrective disclosures.  *Id.*

However,  there  is  a  significant  risk  that  Lead  Plaintiffs  could  not  establish  loss

causation  for  the  second  stock  drop,  which  would  reduce  aggregate  damages  to

$192.7 million.   *Id.*   The $14.1 million settlement thus represents between 5.5%

and 7.3% of the Class's maximum recoverable damages, which is well within the range of other securities class action settlements with similar total losses.  *See id.*; *see also* Joint Decl., Ex. 1 (excerpts from Stefan Boettsich and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2018 Full-Year Review* (NERA 29 Jan. 2019)) at 35, Fig. 27 (the median settlement recovery was 2.6% for cases alleging investor losses between $200-$399 million, and 3.1% for alleged losses between $100-$199 million) and at 36, Fig. 28 (the median ratio of settlements to investor losses between 2009 and 2018 ranged from 1.3% to 2.6%).

Indeed, Courts regularly approve settlements in PSLRA cases recovering a comparable or smaller percentage of maximum damages.  *See, e.g., Gen. Motors Co.*, 315 F.R.D. at 237 (compiling cases approving settlements representing as little as 3.8% of total damages).

The Settlement is also significant in light of the risks to further litigation.  As an initial matter, "[s]ecurities litigation class actions are inherently complex," and "the complexity of these cases cannot be overstated."  *New England Health Care Emps. Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 634 (W.D. Ky. 2006), *aff'd sub nom. Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008).  In addition to the inherent complexity, there were specific procedural and substantive hurdles here that Lead Plaintiffs would have to overcome to prevail.

11

At the time the Settlement was reached, Lead Plaintiffs had filed a motion for class certification and Defendants' response (and the Court's decision) was pending. While Lead Counsel believe that the motion would be granted, class certification is never guaranteed. Defeat at the class certification stage would necessarily result in a defeat for the Class, as Class members' claims would have to be pursued individually.

Lead Plaintiffs would face additional risk if the Litigation moved forward. As discussed in detail in the Joint Declaration, Defendants have consistently raised numerous defenses, including that: (a) none of the challenged statements were materially false or misleading; (b) Defendants did not act with the requisite fraudulent intent; and (c) the alleged misstatements did not cause Lead Plaintiffs' losses. ¶56. Defendants would further challenge the Class's alleged damages estimated by Lead Plaintiffs' damages expert, arguing that actual damages were significantly less or nonexistent. ¶58.

Finally, even if Lead Plaintiffs' overcame each of these significant hurdles, this case presented very real ability-to-pay issues. While Diplomat was a well-capitalized entity at the outset of the case, the Company's financial condition had deteriorated severely by the time the Settlement was reached. ¶¶60-62. Significantly, according to the Company's publicly filed financial reports, as of March 31, 2019, the Company reported less than $2.74 million in cash on its

balance sheet, down from over $17 million reported in the period immediately preceding the date the Litigation commenced. ¶61. Reflecting the Company's financial straits, when the Parties agreed to settle on April 1, 2019, Diplomat's stock price closed at $5.70 per share, down from $14.16 per share at the time the lawsuit was filed, and down from the Class Period high of $37.12. *Id.* Thus, Defendants' wasting directors' and officers' insurance coverage was likely the only source of funds available to resolve the Litigation. Any insurance coverage would have been further eroded or completely exhausted had litigation continued.

Accordingly, for each of the foregoing reasons, this factor favors approval.

### 2. Society's Stake In Rewarding Attorneys Who Enforce The Securities Laws Supports The Requested Fee

In determining the reasonableness of a fee award, courts consider "society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others." *Cardizem*, 218 F.R.D. at 533. The federal securities laws are remedial in nature, and, to effectuate their purpose of protecting investors, the courts must encourage private lawsuits. *See Basic Inc. v. Levinson,* 485 U.S. 224, 230-31 (1988). As the Supreme Court has acknowledged, private enforcement of securities laws is an important supplement to the work of the SEC and Department of Justice ("DOJ"). *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007); *see also Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985). Moreover, class actions are the only feasible way to privately enforce

13

securities laws because "absent class actions, most individual claimants would lack the resources to litigate a case of this magnitude, and individual recoveries are often too small to justify the burden and expense of litigation." *Cardinal Health*, 528 F. Supp. 752 at 765-66.

Given the risk, complexity, and expense of litigating a securities class action such as this one, adequate compensation is necessary to "encourage and support other prosecutions, and thereby forward the cause of securities law enforcement and compliance." *Id.* at 766; *see also Rankin*, 2006 WL 1791377, at *2 (Cohn, J.) ("Adequately compensatory fee awards in successful class actions promote private enforcement of and compliance with important areas of federal law."). Indeed, without adequate compensation, it would be difficult to retain the caliber of lawyers willing and able to properly prosecute to a favorable conclusion complex, risky, and extremely expensive securities class actions such as this one.

Here, the Settlement in this case will provide meaningful relief to hundreds or thousands of investors, thereby promoting the public interest. This is particularly true here because Lead Counsel are not aware of any charges or claims brought by the SEC or the DOJ with regard to the fraud alleged in the Amended Complaint. ¶63. The Settlement may be the only recovery for Class Members to compensate them for the economic harm caused by this alleged fraud. Accordingly, this factor plainly weighs in favor of the requested award. *See*

*Cardizem*, 218 F.R.D. at 534 ("Society's stake in rewarding attorneys who can produce such benefits in complex litigation such as in the case at bar counsels in favor of a generous fee[.]").

### 3.   The Contingent Nature Of The Representation Supports The Requested Fee

"Whether counsel's services were undertaken on a contingent fee basis is another factor for the Court to consider in evaluating a fee request." *Delphi*, 248 F.R.D. at 503-04.  Indeed, "[s]everal courts consider the risk of non-recovery the most important factor in the fee determination." *Cardinal Health*, 528 F. Supp. 2d at 766.

Here, Lead Counsel prosecuted the action entirely on a contingent basis, knowing that it could (and did) last for years, require the expenditure of thousands of attorney hours and significant expenses, and yet ultimately result in a loss.  In fact, Lead Counsel incurred over $225,000 in costs and expenses litigating for the benefit of the Class, received no compensation during the two and a half years this action has been pending, and were never guaranteed recovery of these costs or the payment of any fee.  As a result of the risks and efforts undertaken by Lead Counsel, a $14.1 million recovery was obtained.  This factor supports a finding that the 30% fee request is reasonable.  *See U.S. Steel*, 2009 WL 4646647, at *3 (Cohn, J.) ("A contingency fee arrangement often justifies an increase in the award of attorneys' fees.").

15

### 4.    The Diligent Prosecution Of The Litigation Supports The Requested Fee

In determining the reasonableness of a requested fee, one factor the trial court should consider is "'[t]he extent and nature of the services; and the labor time and trouble involved.'" *Pergament*, 224 F. 2d at 83.  Here, a considerable effort on the part of Lead Counsel was required to obtain this Settlement.  As discussed in more detail in the Joint Declaration, this Litigation was hard-fought, and included:

- conducting a thorough investigation, including an in-depth review and analysis of (i) Diplomat's SEC filings and press releases; (ii) research reports by securities and financial analysts; (iii) transcripts of Diplomat's investor conference calls; (iii) media reports about Diplomat and DIR fees; (iv) analyses of the price movement of Diplomat stock; (v) consultation with relevant experts; and (vi) other publicly available material and data (¶25);

- drafting the initial complaint and the detailed, 78-page amended complaint based on Lead Counsel's extensive factual investigation and legal research into the applicable claims (¶¶24-25);

- researching, drafting, and filing an opposition to Defendants' motion to dismiss, and ultimately defeating the motion (¶¶26-29);

- researching, drafting, and filing an opposition to Defendants' motion for reconsideration of the order denying the motion to dismiss, and ultimately defeating the motion for reconsideration (¶¶30-33);

- drafting and serving discovery requests on Defendants and document subpoenas on third parties (¶¶34, 38, 40);

- reviewing and responding to discovery requests served on Lead Plaintiffs by Defendants (¶42);

- reviewing more than 19,000 pages of documents produced by Defendants and third parties (¶¶42-43);

16

- preparing for and deposing a Diplomat Rule 30(b)(6) witness (¶46);

- consulting with experts on accounting, loss causation, and damages (¶56);

- researching, drafting, and filing a motion for class certification (¶49); and

- preparing for and participating in the mediation process, including drafting two mediation statements and attending two full-day mediation sessions (¶¶51-52).

The Settlement was achieved only by Lead Counsel's tenacious advocacy and diligent prosecution. The significant resources devoted by Lead Counsel reflect the effort required to bring this difficult Litigation to a successful conclusion and warrants approval of the requested fee.

### 5.    Complexity Of The Litigation Supports The Requested Fee

The complexity of the litigation is a significant factor to be considered in determining the reasonableness of an attorneys' fee award. *See Delphi*, 248 F.R.D. at 504. As numerous courts have recognized, "[s]ecurities litigation class actions are inherently complex." *New England Health*, 234 F.R.D. at 634; *Fogarazzo v. Lehman Bros., Inc.*, 2011 WL 671745, at *3 (S.D.N.Y. Feb. 23, 2011). The legal and factual issues are complicated and the outcome is highly uncertain. *Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983) (securities litigation is "'notoriously difficult and unpredictable'" (internal quotation marks omitted)); *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 246 F.R.D. 156, 172

(S.D.N.Y. 2007) ("Securities class litigation 'is notably difficult and notoriously uncertain.'" (internal quotation marks omitted)).  This case was no exception.

As noted above and in the Joint Declaration, this Litigation raised many complex factual and legal questions that required extensive efforts by Lead Counsel and consultation with experts to bring to resolution.  To prosecute the case, Lead Counsel had to, among other things, gain a working knowledge of the pharmaceutical industry and fully understand the DIR fee reimbursement process. *See* ¶¶19-21, 25.  To do so, Lead Counsel conducted a thorough investigation, consulted experts, and engaged in extensive discovery, including the review of more than 19,000 pages of documents provided by Defendants and key third parties, as well as deposing a Diplomat Rule 30(b)(6) witness.  ¶¶25, 42, 46.

Lead Counsel also had to confront complicated materiality, scienter, loss causation, and damages issues.  ¶¶24-29.  These were not easy tasks, and Lead Counsel consulted extensively with experts on accounting, loss causation, and damages when crafting their complaints, briefing the motions to dismiss and motion for reconsideration, and drafting the motion for class certification.  ¶56. Indeed, the complexity of the issues involved in this case is evidenced by the 78-page Amended Complaint and the voluminous briefing dedicated to addressing Defendants' motion to dismiss and motion for reconsideration.  ¶¶24-33.  Had Lead Counsel not devoted the necessary resources and attention to the complicated

questions raised in this case, they simply could not have prevailed.  *See Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009) ("To be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action."); *see also In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, 2006 WL 903236, at *9 (S.D.N.Y. Apr. 6, 2006) ("[T]he legal requirements for recovery under the securities laws present considerable challenges, particularly with respect to loss causation and the calculation of damages.  These challenges are exacerbated . . . where a number of controlling decisions have recently shed new light on the standard for loss causation.").

Consequently, the complexity of the Litigation weighs heavily in favor of the requested fee award.  *See City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *16 (S.D.N.Y. May 9, 2014) ("[T]he complex and multifaceted subject matter involved in a securities class action such as this supports the fee request."), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015).

### 6. The Professional Skill And Standing Of Counsel Supports The Requested Fee

Courts evaluate the professional skill and standing of counsel.  *See Cardizem*, 218 F.R.D. at 533.  Here, the skill and standing of counsel for all parties was of the highest caliber.

Lead Counsel are leaders in the fields of securities class actions and complex litigation. *See* Declaration of Matthew I. Alpert Filed on Behalf of Robbins Geller, Ex. F (Robbins Geller firm resume); Declaration of Joshua L. Crowell Filed on Behalf of GPM, Ex. C (GPM firm resume). The quality of the representation is best demonstrated by the benefit achieved for the Class and the effective and efficient prosecution and resolution of the Action under difficult and challenging circumstances. The substantial recovery obtained for the Class is the direct result of the efforts of highly skilled and specialized attorneys who possess significant expertise in the prosecution of complex securities class actions. From the outset of the Litigation, Lead Counsel engaged in a concerted effort to obtain the maximum recovery for the Class and committed considerable resources and time in the research, investigation, and prosecution of the case. Based on Lead Counsel's diligent efforts and their skill and reputation, they were able to negotiate a highly favorable result. Such quality, efficiency, and dedication support the requested fee.

The quality of the work performed by Lead Counsel in attaining the Settlement should also be evaluated in light of the quality of opposing counsel. Lead Counsel were opposed by Sidley Austin LLP and Honigman LLP, highly-qualified defense firms that spared no effort in the defense of their clients. ¶77. Lead Counsel were nevertheless able to develop a case that was sufficiently strong to persuade Defendants to settle on terms that represent a fair, reasonable, and

adequate recovery to the Class. "The ability of [Plaintiff's] Counsel to negotiate a favorable settlement in the face of formidable legal opposition further evidences the reasonableness of the fee award requested." *Delphi*, 248 F.R.D. at 504.

### 7. Class Members' Reaction Supports Final Approval

"The Class's reaction to the requested fee award is also important evidence of the fairness and reasonableness of the fee request." *Delphi*, 248 F.R.D. at 504; *In re Nationwide Fin. Servs. Litig.*, 2009 WL 8747486 at *14 (S.D. Ohio Aug. 19, 2009) ("The reaction of the Class [only one objection out of nearly 125,000 individual notices sent] also supports the requested fee and expense award."). To date, there have been no objections to Lead Counsel's fee request.[5]

\*     \*     \*

Accordingly, there can be no dispute that all of the relevant factors for consideration favor approving the requested fee and thus Lead Counsel respectfully request that the Court grant an attorneys' fee award in the amount of 30% of the Settlement Fund, plus interest earned thereon.

//

//

//

---

[5] As set forth in the Notice, the deadline to provide counsel with objections is July 30, 2019.

**E.** **Plaintiffs' Counsel's Costs and Expenses Are Reasonable And Were Necessarily Incurred To Achieve The Benefit Obtained**

Plaintiffs' Counsel also request award of the costs and expenses they incurred in connection with the Litigation in the amount of $225,717.22. *See* ¶78. "Under the common fund doctrine, 'class counsel is entitled to reimbursement of all reasonable out-of-pocket litigation expenses and costs in the prosecution of claims and settlement, including expenses incurred in connection with document production, consulting with experts and consultants, travel and other litigation-related expenses.'" *New England Health*, 234 F.R.D. at 634-35; *see Se. Milk*, 2013 WL 2155387, at *8 ("expense awards are customary" in common fund cases). In determining which expenses are reasonable and compensable, the question is whether such costs are of the variety typically billed by attorneys to paying clients in similar litigation. *See New England Health,* 234 F.R.D. at 634-35.

Here, Plaintiffs' Counsel have each submitted separate declarations attesting to the accuracy of their expenses, listing them by specific category and amount. *See* ¶78. A significant portion of the expenses were incurred for professional services rendered by Lead Plaintiffs' experts and mediators, with the remaining expenses largely attributable to the costs of online and factual research and travel (to court appearances and mediations) over the course of the litigation. *See* ¶81.

These expenses were critical to Lead Plaintiffs' success in achieving the proposed Settlement, and they are of the type typically billed by attorneys to

22

paying clients in similar litigation. *See In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 468 (S.D.N.Y. 2004) ("The expenses incurred-which include investigative and expert witnesses, filing fees, service of process, travel, legal research and document production and review-are the type for which 'the paying, arms' length market' reimburses attorneys."); *Delphi*, 248 F.R.D. at 504-05 (approving reimbursement of $1.3 million in costs and expenses for "such items as accounting and damages expert and consultant fees, management and photocopying of documents, on-line research, messenger service, postage, express mail and overnight delivery, long distance and facsimile expenses, transportation, meals, travel and other incidental expenses directly related to the prosecution of this action"). They are, therefore, "properly chargeable to the Settlement fund." *Global Crossing*, 225 F.R.D. at 468.

Moreover, not a single objection to the expense request has been received, and the amount requested is below the $300,000 expense limit disclosed in the Notice. ¶79. Accordingly, the Court should award the requested costs and litigation expenses.

//

//

//

//

23

**F.**      <u>**The Requested Awards To Lead Plaintiffs Are Reasonable**</u>

Lead Plaintiffs seek $13,657.51 in the aggregate in connection with their representation of the Class.[6]  The PSLRA specifically provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class." 15 U.S.C. § 78u-4(a)(4).

Lead Plaintiff Government Employees' Retirement System of the Virgin Islands ("GERS") seeks an award of $2,157.51 for time dedicated by GERS employees to the Litigation, and Lead Plaintiff Kitsonas seeks an award of $2,500 and Zimmerman seeks an award of $9,000 for time they dedicated to advancing the Litigation. *See* GERS Decl., at ¶6; Kitsonas Decl., ¶12; Zimmerman Decl. ¶12. Employees of GERS and Lead Plaintiffs Kitsonas and Zimmerman took an active role in the Litigation, including reviewing significant pleadings and briefs in the Litigation, communicating regularly with Lead Counsel regarding the Litigation, authorizing settlement discussions, monitoring the progress of settlement negotiations, and approving the Settlement.  GERS Decl., ¶3; Kitsonas Decl., ¶7; Zimmerman Decl., ¶7.  Zimmerman also assisted Lead Counsel during the initiation of the Litigation, by among other things researching the Company and

---

[6] *See* GERS Decl., ¶6; Kitsonas Decl., ¶12; Zimmerman Decl. ¶12.

the underlying facts of the Litigation, and providing input based on his experience as a licensed pharmacist.  Zimmerman Decl., ¶4.

Numerous courts have approved reasonable awards to compensate lead plaintiffs for the time and effort they spent on behalf of a class.  *See Cardinal Health*, 528 F. Supp. 2d at 770-71 (awarding an aggregate of $82,452.81, consisting of $10,830.67 to one lead plaintiff, $14,812.50 to the second lead plaintiff, and $56,809.64 to the third lead plaintiff); *New England Health*, 234 F.R.D. at 635 (awarding an aggregate of $27,500, consisting of $5,000 to one lead plaintiff and $7,500 to each of three others); *In re Provectus Biopharmaceuticals, Inc. Sec. Litig.*, 2016 WL 7735229, at *3 (E.D. Tenn. Dec. 12, 2016) (awarding $10,000 to one lead plaintiff); *In re Caraco Pharm.*, 2013 WL 3213328, at *4 (awarding an aggregate of $13,180 to three lead plaintiffs).  Accordingly, Lead Plaintiffs respectfully request that the Court grant their modest requests for $13,657.51 in the aggregate.  There have been no objections to these requests by any members of the Class.

## IV.    CONCLUSION

For the foregoing reasons, Lead Counsel respectfully request that the Court grant their Fee and Expense Application, and award $13,657.51 to the Lead Plaintiffs.

Dated: July 16, 2019

Respectfully submitted,

**ROBBINS GELLER RUDMAN**
  **& DOWD LLP**
ELLEN GUSIKOFF STEWART
JONAH H. GOLDSTEIN
MATTHEW I. ALPERT
HILLARY B. STAKEM
ALEXI H. PFEFFER-GILLETT

By: _s/ Matthew I. Alpert_

MATTHEW I. ALPERT
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

**GLANCY PRONGAY &**
  **MURRAY LLP**
LIONEL Z. GLANCY
JOSHUA L. CROWELL
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: 310/201-9150
310/201-9160 (fax)

_Lead Counsel for Lead Plaintiffs_
_and the Class_

**VANOVERBEKE MICHAUD &
  TIMMONY, P.C.**
MICHAEL J. VANOVERBEKE (P42641)
THOMAS C. MICHAUD (P46787)
79 Alfred Street
Detroit, MI 48201
Telephone: 313/578-1200
313/578-1201 (fax)
mvanoverbeke@vmtlaw.com
tmichaud@vmtlaw.com

**THE MILLER LAW FIRM, P.C.**
E. POWELL MILLER (P39487)
SHARON S. ALMONRODE (P33938)
950 W. University Dr., Suite 300
Rochester, MI 48307
Telephone: 248/841-2200
248/652-2852 (fax)
mln@millerlawpc.com
ssa@millerlawpc.com
dal@millerlawpc.com

*Liaison Counsel for the Class*

27

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on July 16, 2019, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ MATTHEW I. ALPERT
MATTHEW I. ALPERT

ROBBINS GELLER RUDMAN
& DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:  MAlpert@rgrdlaw.com

# Mailing Information for a Case 2:16-cv-14005-AC-SDD Zimmerman v. Diplomat Pharmacy, Inc. et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Sharon S. Almonrode**
  ssa@millerlawpc.com,djv@ecf.courtdrive.com,djv@millerlaw.com,ssa@ecf.courtdrive.com,sab@miller.law,sab@ecf.courtdrive.com

- **Matthew I. Alpert**
  malpert@rgrdlaw.com,kathyj@rgrdlaw.com,HStakem@rgrdlaw.com,e_file_sd@rgrdlaw.com,kwoods@rgrdlaw.com,2127683420@filings.docketbird.com

- **Joshua L. Crowell**
  JCrowell@glancylaw.com,joshua-crowell-3496@ecf.pacerpro.com,info@glancylaw.com,VMesropyan@glancylaw.com

- **James W. Ducayet**
  jducayet@sidley.com,james-ducayet-9115@ecf.pacerpro.com,zalam@sidley.com,efilingnotice@sidley.com

- **Jonah H. Goldstein**
  jonahg@rgrdlaw.com

- **Nicholas B Gorga**
  ngorga@honigman.com,litdocket@honigman.com,cwalmsley@honigman.com

- **Ellen Anne Gusikoff Stewart**
  elleng@rgrdlaw.com

- **Thomas C. Michaud**
  tmichaud@vmtlaw.com

- **E. Powell Miller**
  epm@millerlawpc.com,aad@miller.law,aad@ecf.courtdrive.com,sab@miller.law,sab@ecf.courtdrive.com

- **Andrew M. Pauwels**
  apauwels@honigman.com,litdocket@honigman.com,ahatcher@honigman.com

- **Alexi Harry Pfeffer-Gillett**
  agillett@rgrdlaw.com

- **Nilofer I. Umar**
  numar@sidley.com,efilingnotice@sidley.com,nilofer-umar-6698@ecf.pacerpro.com,dgeiger@sidley.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)